Branham, Admr., Appellant, v. Fordyce, Appellee.

(No. 2412—Decided May 16, 1957.)

Messrs. Coolidge, Wall & Wood, for appellant.
Messrs. Curtner, Brenton & O'Hara, for appellee.

Crawford, J. This is an appeal on questions of law from a judgment in the Court of Common Pleas for defendant-appellee upon a directed verdict at the close of plaintiff-appellant's evidence.

Plaintiff, as administrator, brought the action for the wrongful death of his decedent, Raymond Branham. The amended petition alleges that on February 11, 1955, decedent rented a housekeeping room in a house operated by defendant, which room contained a gas heater without a flue connection to carry off carbon monoxide and other poisonous gases produced in its use, and that on February 12 Raymond Branham was

killed in this room by carbon monoxide fumes given off by such heater.

The assignments of error made by the plaintiff are:

1. Sustaining defendant's motion for a directed verdict at the conclusion of plaintiff's evidence;

2. Finding that there was no issue of fact requiring the jury's decision, that the defendant owed no duty of care to decedent and was therefore free from negligence, that decedent was guilty of contributory negligence;

3. Overruling plaintiff's motion for a new trial;

4. Rulings on evidence;

5. Other errors appearing in the record.

The evidence established the physical facts alleged. The trial court held that the relationship between the defendant and the decedent was that of landlord and tenant, that the unvented heater was a patent and not a latent condition, and that there was no liability on the part of the landlord.

Plaintiff contends that the legal relationship between the parties was a question for the jury. However, the pertinent facts were clearly established and not in dispute, so that there remained only a question of law to determine the relationship from these facts. This question therefore devolved upon the court.

The facts were that defendant, as agent for the owner, handled the renting of the building in question, which consisted of four living units: a four-room apartment on the first floor, a sleeping room and two one-room housekeeping units on the second floor. It was one of the latter in which the death occurred. It was fully furnished for living quarters, except for linens, including the unvented gas heater. Decedent paid his rent for one week, made a key deposit and entered into possession. This possession was exclusive, subject to defendant's right to make weekly inspections.

Upon the basis of these facts the relationship of landlord and tenant is well established. Having complete possession, decedent was clearly a tenant, 24 Ohio Jurisprudence, 735, Landlord and Tenant, Section 2; not a mere lodger, 24 Ohio Jurisprudence, 741, Landlord and Tenant, Section 7.

"As between the relationship of landlord and tenant and

that of lodginghouse keeper and lodger, it has been held that, in the absence of any provision in the contract or of proof of extrinsic circumstances indicating a contrary intention, it will be presumed that it was the intention of the parties to create the relationship of landlord and tenant." 43 Corpus Juris Secundum, 1143, Innkeepers, Section 3 e.

The landlord's very reasonable and not unusual right of inspection did not change the legal status. The right of a landlord to enter the premises for certain purposes, especially if reserved in the lease or rental agreement, is not inconsistent with the landlord and tenant relationship. 32 American Jurisprudence, 185, 186, Landlord and Tenant, Sections 195, 196. The landlord's ownership is not terminated by the lease, it is an essential basis for the lease; and the reservation of a reasonable right of inspection of his property does not deprive the landlord of his status nor the tenant of possession.

"The possession of the tenant need not in all cases be complete or exclusive. There may be an implied or express reservation of a right to possession on the part of the landlord, for all purposes not inconsistent with the privileges granted to the tenant." 51 Corpus Juris Secundum, 512, Landlord and Tenant, Section 2.

"A tenancy exists where one has let real estate to another, to hold of him as landlord, but it does not necessarily imply a right to complete and exclusive possession; there may be possession on the part of the landlord for all purposes not inconsistent with the privileges granted to the tenant." *Bozzelli* v. *H. H. Seff Adv. Co.*, 8 Ohio Law Abs., 642, 644.

"A landlord has the right during a tenancy to enter and make such repairs to the premises as are necessary to prevent waste." *Rammell* v. *Bulen*, 51 Ohio Law Abs., 125, 80 N. E. (2d), 167.

We proceed, therefore, with our further analysis of the case on the basis of a landlord and tenant relationship, and the reciprocal rights and duties arising therefrom.

The fact that the heater was unvented was patent and equally observable by both parties. It cannot be claimed. therefore, that defendant failed in the landlord's duty to disclose hidden danger.

Counsel for plaintiff ingeniously argued that the hazard was a latent one so far as decedent was concerned because of his limited education. It requires no engineering degree to know the possible consequences of fumes from a gas heater. No one can say for a certainty whether decedent appreciated the inherent danger or not. It would be mere speculation to say that he did not. There is no justification for holding the landlord to a higher degree of diligence than the tenant.

The significance of a tenant's failure fully to appreciate the danger inherent in the condition of the premises and the question of when he assumes the risk are discussed by Judge Dustin in the case of *Marlow* v. *Shipman*, 18 O. L. R., 209, and to some degree in the corresponding text of 24 Ohio Jurisprudence, 929, Landlord and Tenant, Section 191. While the facts in that case differ from those before us, the principles there stated tend to deny rather than to support plaintiff's contention.

Defendant had instructed the decedent in turning on and lighting the heater. It is argued that the tragedy resulted from decedent's misuse of it in turning the flame unreasonably high. Defendant testified that when she entered the room and found the body, the heater was turned as high as it could be turned. Plaintiff argues that a substantial rise in outside temperature effected an increase in the gas pressure, which accounted for the exceedingly high flame observed at that time. Both these arguments are necessarily based upon conjecture.

The evidence gives no indication that the heater was not in good mechanical condition. The only possible basis for claiming common-law negligence on the part of the defendant would be in the furnishing of the unvented type of heater. But the absence of a vent being equally observable by both parties, and decedent being obligated to exercise ordinary care for his own safety, the plaintiff can not recover on that basis.

In addition to the question of negligence, the facts of the case must be considered in connection with any other possible basis of liability. If the landlord concealed a known defect from which the tenant was injured, the basis of liability would be fraud and concealment rather than mere negligence. 24 Ohio Jurisprudence, 929, Landlord and Tenant, Section 192.

The lack of a vent being easily observable by both parties, that principle has no application to this case.

Furthermore, there is no basis for claiming breach of warranty. There is no evidence of any express warranty, and "the lessor does not impliedly warrant that the demised premises are in a tenantable or safe condition, or that they are fit for the use to which the lessee intends to put them." 24 Ohio Jurisprudence, 924, Landlord and Tenant, Section 189.

The only other possible basis of liability must be found in statutory provision.

If there was a violation of any municipal ordinance, it was not pleaded and so can not be considered; and no state statute is found to apply. Plaintiff relies upon Section 3781.06, Revised Code, which, in February 1955, when the facts in this case arose, read in part as follows:

"All public buildings which may be used as a place of resort, assembly, education, entertainment, lodging, trade, manufacture, repair, storage, traffic, or occupancy by the public, and all other buildings or parts and appurtenances thereof erected within the limits of any city or in any territory laid out in town lots within three miles of the corporate limits of any city, whether within a village or not, shall be so constructed, erected, equipped, and maintained that they shall be safe and sanitary for their intended use and occupancy, except that Sections 3781.06 to 3781.18, inclusive, and Section 3791.04 of the Revised Code, do not apply to single and two-family dwelling houses.

"As used in such sections a building is any structure consisting of foundations, walls, columns, girders, beams, floors, and roof, or a combination of any number of these parts, with or without other parts or appurtenances.

"A building is considered safe when free from danger or hazard to the life, safety, health, or welfare of persons occupying or frequenting it, or of the public and from danger of settlement, movement, disintegration, or collapse, whether such danger arises from the methods or materials of its construction or from equipment installed therein, for the purpose of lighting, heating, the transmission or utilization of electric current, or from its location or otherwise."

There are several reasons why these provisions do not enlarge the common-law duty or liability of the defendant.

First of all, they have apparently never been so construed.

Furthermore, if the statute were in derogation of the common law, it would be necessary that such purpose be expressly declared or necessarily implied. 82 Corpus Juris Secundum, 939, Statutes, Section 393. A statute in derogation of the common law is always to be strictly construed. 50 American Jurisprudence, 427, Statutes, Section 403.

This section is obviously concerned with building standards (the heading of the chapter being "Building Standards—General Provisions") as distinguished from regulations as to furniture or appliances. The term, "parts and appurtenances," of buildings signifies an integral part of a permanent structure.

Standing alone, the term, "equipment installed therein," is somewhat general; but in its context it probably means more than the mere setting in of movable equipment. But at most it is too vague and indefinite to be accepted as a clear and positive departure from common-law principles.

That it was not the intent of the Legislature to change the common-law rule as to the duties and responsibilities of landlords generally may be attested by the slight, but apparently clarifying, amendments of the section which became effective October 5, 1955. It was then made clear that only public buildings were covered.

It is believed that this was the sort of amendment that was intended to clarify the meaning rather than to change the basic purpose of the statute. This conclusion is supported by the limited nature of the amendment, confined as it is to only a few definitive words, by the fact that no case has been found where the interpretation sought by plaintiff has been adopted, and by the following principle of statutory construction:

"Usually a revision of statutes simply iterates the former declaration of legislative will: a statute as revised is usually considered as a continuation of the previous law, and changes made by a revision will not be construed as altering the law unless it is clear that such was the intention. * * * the changes

made by the revision may usually be accounted for by the desire to render the provisions more concise or simple, to restate and clarify existing law, to correct inadvertent errors, to remove inconsistencies, or to bring the laws into some system and uniformity." 82 Corpus Juris Secundum, 462, 465, Statutes, Section 276 a and b.

For the foregoing reasons, we find no error in assignments 1, 2 and 3. As to 4 and 5, pertaining to rulings upon the evidence and other errors generally, nothing of significance has been pointed out or discovered in the record.

The judgment of the Court of Common Pleas is accordingly affirmed.

*Judgment affirmed.*

HORNBECK, P. J., and WISEMAN, J., concur.