MARGARET EGAN, AN INFANT, BY JAMES B. EGAN, HER
FATHER, AS NEXT FRIEND, AND JAMES B. EGAN,
RESPONDENTS, v. GOTTFRIED KRUEGER, APPEL-
LANT.

Submitted October 29, 1926—Decided January 31, 1927.

A screen in a window, obviously and of common knowledge, is not
placed there for the purpose of keeping persons from falling out
of a window, any more than the glass in the window itself is
placed there for that purpose, and a landlord is under no duty
when such a screen is used for a purpose other than intended.

On appeal from the Supreme Court.

For the appellant, *Edwin F. Smith* and *Walter L. Glen-
ney.*

For the respondents, *Robert H. Doherty.*

The opinion of the court was delivered by

McGLENNON, J.   This is an appeal by the defendant be-
low, from a judgment entered upon a verdict of a jury, in an
action instituted in the Supreme Court, and tried at the
Hudson Circuit.   The infant plaintiff, Margaret Egan, ob-
tained a verdict against the defendant for five hundred ($500)
dollars, and the plaintiff James B. Egan obtained a verdict
for four hundred ($400) dollars.   The suit was instituted
to recover damages for injuries received by Margaret Egan,
who fell out of a window of an apartment house, in the city
of Jersey City, owned by the defendant, Gottfried Krueger.
The father, James B. Egan, sued to recover for moneys ex-
pended by him in endeavoring to cure the child of her in-
juries.

The relevant facts are the following: James B. Egan and
his family occupied apartment No. 301, which was a five-room
apartment, on the third floor of a twenty-five-room apartment

building, located at No. 145 Harrison avenue, Jersey City, New Jersey, owned by Gottfried Krueger, defendant below.

On May 4th, 1925, at or about two P. M., the infant plaintiff, Margaret Egan, two and one-half years old, was with her mother in the bedroom. This room had two windows. These windows were up. Each of the windows contained a screen, which covered the lower portion of the windows. These screens were of the usual type, being square, and having a framework of wood, with wire screening affixed thereto. The framework was grooved, so that the screens could slide up and down. The defendant installed and maintained these screens, and it appeared that the screen in one of the windows —the window in question—had been blown out by the wind sometime previous, and did not properly fit the window.

The mother left the bedroom and went to the hall for a moment to answer the telephone, leaving the child playing on the floor of the bedroom, about six feet from the screened window. The sill of this window was about three or three and one-half feet from the floor, and was above the child's head. The mother had just said "Hello" on the telephone when she heard a scream. She rushed back to the bedroom and found the child missing and the window screen gone. Both the screen and the child were found in the courtyard below. No one saw the accident, and there is no testimony to show how the child fell out of the window.

After plaintiff's counsel had rested his case, defendant's counsel moved for a nonsuit on the following grounds—*first,* on the ground that there had been no negligence shown on the part of the defendant attributable in any way to the accident to this young girl; *secondly,* if the screen was defective, that has not been shown to have been the proximate cause of the injury to this child; *thirdly,* if the screen was defective, and the accident happened in the way I presume, by reason of the child climbing up on the window sill and putting its hand on the window screen, thereby forcing the screen out, that does not put any negligence on the landlord which in any way contributed to this accident; *fourthly,* a screen is not intended for the purpose used in the way it was used at the time of this accident, that is, if the child

climbed up on the window sill and put its weight on the screen and forced the screen out, that was not such use as it should have been put to. This motion was denied, as well as a later motion presenting the same grounds in asking for a direction of a verdict for the defendant.

The trial court submitted the case to the jury, apparently, on the theory that the landlord having assumed the duty of supplying and maintaining screens, it was the province of the jury to determine whether the screens were installed for the purpose of keeping persons from falling out of a window or for the purpose of keeping out insects, and that if they found the former purpose and negligence on the part of the landlord, then they might assess damages for the infant plaintiff and her father.

The jury returned a verdict in favor of the plaintiffs, as stated above, and from the judgment entered thereon, this appeal was taken by the defendant.

The grounds advanced by defendant's counsel for reversal are the same as those mentioned in his motion for nonsuit and direction of a verdict in the court below, together with several alleged errors in the court's charge to the jury.

It seems to us that there were no proofs in this case justifying the submission of the question to the jury on the theory charged by the trial court. A screen in a window, obviously, and of common knowledge, is not placed there for the purpose of keeping persons from falling out of a window, any more than the glass in the window itself is placed there for that purpose. Consequently, it is manifest that this accident was not the result of the failure of the defendant to perform any duty which he owed to the child for her protection. This is the principle upon which the decisions in *Gavin* v. *O'Connor*, 99 *N. J. L.* 162, and *Saunders* v. *Eastern Hydraulic Brick Co.*, 63 *Id.* 554, is rested. In these cases the facts are essentially similar to the one before us. In the first-mentioned case, plaintiff's intestate, a boy between seven and eight years old was fatally injured in the backyard attached to a two-family house, belonging to the defendant, by the fall of a clothes pole erected and maintained by defendant to support clothes lines extended from the house. Plaintiff and his

family were tenants of the ground floor, and the intestate was his son, who, with several other boys, was playing in the backyard at the time. There was evidence to indicate that the pole was decayed near the ground and had been patched by nailing a wooden cleat to it, but it had stood up until that time under the strain of such washed clothes as were hung on the lines, and this was the sole purpose for which it was intended. At the time of the accident there were no clothes hung out, but a line extended from plaintiff's back window to the pole, and at least one of the boys was swaying on this line, holding the rope in his hands, and trying to touch the ground with his knees, and it was at this precise juncture that the pole fell. This court, in its opinion by Mr. Justice Parker, among other things, declared: "Obviously, a clothes pole is not erected in the backyard of a tenement, and clothes lines extending thereto, for boys to swing on. * * *; but we are unable to see in this case anything beyond a use of the pole for a purpose never contemplated by the defendant, and as to which use he was under no duty of care. * * * The nonsuit was right."

In the second case above mentioned, the facts were the following: Plaintiff was a workman in the employ of the defendant. One of the defendant's buildings in which it carried on its business has a roof, nearly flat, in which was a "skylight" fitted for two panes of glass, twenty by forty. The skylight was on about the same plane as the roof, and there was what plaintiff calls a "mutton," meaning, no doubt, a mullion, dividing the frame and sustaining the contiguous parts of the panes of glass. One of the panes was broken, and plaintiff, who was a glazier, was directed by someone having authority from defendant to go upon the roof and put a new pane in the place of the broken one. In attempting to do so, plaintiff put his hand upon the centerpiece, or mullion, and leaned with so much of the weight of his body upon it as to break it. He had assumed an attitude or position that, upon the breaking of the centerpiece, he fell headforemost through the window and received by that fall the injury of which he complained. The late Chief Justice Magie, delivering the opinion of this court in this case, said:

"But the purpose of the mullion in this skylight was to aid in the support of the panes of glass. The master's duty was to have it so constructed as to reasonably answer that purpose, but it is impossible to discover any ground in reason for imposing upon the master any duty to have it so constructed as to bear the weight or any part of the weight of a servant, although engaged in repairing it. * * * The judgment [nonsuit] must be affirmed." Moreover, the proofs in this case failed absolutely to establish facts to explain how the accident itself happened, or any facts from which a legal presumption could be drawn, as to the manner in which it happened. *Price* v. *New York Central Railroad Co.,* 92 N. J. L. 429.

It was therefore improper to refuse a nonsuit.

The judgment will be reversed in order that a *venire de novo* issue.

*For affirmance*—None.

*For reversal*—The CHANCELLOR, CHIEF JUSTICE, TREN-CHARD, MINTURN, KALISCH, BLACK, KATZENBACH, CAMPBELL, LLOYD, VAN BUSKIRK, McGLENNON, KAYS, HETFIELD, JJ. 13.