RILEY, APPELLANT, v. CINCINNATI METROPOLITAN HOUSING AUTHORITY, APPELLEE.

(No. C-73002—Decided June 11, 1973.)

APPEAL: Court of Appeals for Hamilton County.

*Messrs. Taft, Luken & Boyd,* for appellant.
*Messrs. McCaslin, Imbus & McCaslin,* for appellee.

PALMER, J. This appeal arises from an action by plaintiff, the appellant herein, a minor, by and through his mother, Cynthia Riley, against the defendant, the appellee herein, Cincinnati Metropolitan Housing Authority, for damages arising from personal injuries caused by a fall from an unscreened window in the third floor apartment leased by Cynthia Riley from defendant. Motions for summary judgment were filed by both appellant, as to the issue of liability only, and by the appellee, and were determined by the trial court on the basis of the pleadings, a deposition by appellee of Cynthia Riley, an affidavit submitted by appellant of an eyewitness to the fall from the window of appellant, and various medical statements. The trial court overruled appellant's motion for summary judgment and granted that of the appellee, Cincinnati Metropolitan Housing Authority. It is from that order and judgment that this appeal is taken.

A review of the rather sparse record of this case reveals the following material facts placed before the trial court: Mrs. Riley, separated from her husband, moved herself and her three children into apartment 304, a third floor apartment of a structure owned and operated by defendant-appellee in June, 1968, and a lease was signed with appellee formalizing such tenancy, the terms of which, except for a clause permitting mutual termination on three to fifteen days' notice, were not made part of the record and were not before the trial court; that the four rooms contained within apartment 304 were occupied as the private home of Mrs. Riley and her children, including the appellant; that there were four windows in the living room of apartment 304, two of which at the time of leasing were screened with the usual type of screening designed to keep

insects out, and two of which were not; that the living room windows had waist-high sills and were of the casement type, opening outward from a handle mid-way on the window, four to five feet from the floor, and that all living room windows were closed on the day of the accident; that on the day of the accident, Mrs. Riley had left the appellant, then twenty-three months of age, in his bedroom while she was hanging curtains in the living room and knew nothing further until informed that the child had fallen from one of the unscreened living room windows, one of which she observed was then open; that Mrs. Riley had never seen the appellant crawl up into any of the windows before, or open a window, and stated that he could not even open a door; and that she had called appellee about the living room screens "because they had been took out the windows, and they said they was in for repair, but I had been there over a year, and I had been calling them peoples and telling them I needed some screens, because my kids was up in the windows, and they had to get it done * * *."

Appellant urges in his two assignments of error that the trial court erred in granting a motion for summary judgment, where reasonable minds could conclude from the evidence that: (a) appellee failed properly to exercise his duty of reasonable care toward appellant, which failure was the proximate cause of injuries to appellant; and (b) appellee maintained a nuisance which proximately caused the injuries complained of.

While the direct factual situation presented in this appeal appears to be a matter of first impression in this state, the legal principles governing the matter are well settled. Thus, it is clear beyond argument that either occupation or control of premises is required as a basis for liability for personal injuries resulting from the condition of such premises: that a lease normally transfers both attributes of occupation and control to the tenant, relieving the landlord from tort liability; and that an agreement by the landlord to make repairs, and/or the making of such repairs, does not of itself constitute a retention or transfer of control or occupation to the landlord so as to affix

tort liability to such landlord. *Cooper* v. *Roose,* 151 Ohio St. 316; *Ripple* v. *Mahoning National Bank,* 143 Ohio St. 614; *Berkowitz* v. *Winston,* 128 Ohio St. 611; 52 Corpus Juris Secundum, Landlord and Tenant, Section 417(3). This court has ruled in *Rotte* v. *Meierjohan,* 30 Ohio Op. 292, that an iron guard placed in front of a window to prevent persons or articles from falling therefrom, in the absence of any specific agreement in the rental contract relating thereto and in the absence of any evidence of control by the landlord, was an integral part of the apartment leased to the tenant and was in the occupation and control of the landlord, and which the landlord was not obligated to repair even though he voluntarily did so on several occasions; and that no liability attached to the landlord, in the absence of fraud or concealment of the condition, for injuries to the tenant resulting from its disrepair. This situation may be contrasted with those authorities cited by appellant and presented in such cases as *Ross* v. *Heberling,* 92 Ohio App. 148, involving an unprotected common stairway in the control of the landlord, and *Friedl* v. *Lackman,* 136 Ohio St. 110, involving an express contractual assumption by the lessor of repair obligations as to "the outside of said building," and held to imply, under the facts of the case, an obligation to repair sash cords as a part thereof. It may also be constrasted with those cases involving, like the *Friedl* case, *supra,* actions against the landlord by third persons not otherwise connected with the premises, and those cases like *Verplanck* v. *Morgan,* 55 Ohio Law Abs. 574, where a specific repair obligation not otherwise incumbent upon the landlord, is voluntarily and negligently undertaken, proximately resulting in injuries to the tenant. 52 Corpus Juris Secundum, Landlord and Tenant, Section 417(12).

The principles applicable to the instant appeal are most closely exemplified in *Branham* v. *Fordyce,* 103 Ohio App. 379, and *Yaeger* v. *Parkgate Realty Co.,* 88 Ohio Law Abs. 385. In the former, a tenant died from carbon monoxide poisoning from an unvented heater, the condition of the heater being equally observable at the outset of the lease

to both landlord and tenant. The court held that the tenant had exclusive possession and control of the premises and, in the absence of fraud or concealment, no liability attached to the landlord. In the *Yaeger* case, *supra*, the trial court was held properly to have sustained the landlord's motion for judgment on the pleadings and opening statement, where the allegations were that at the time of renting the premises, the tenant observed that boards constituting the door sill of a kitchen and living room door were missing, leaving a hole under the doors, that the landlord represented that the doors and sills were his responsibility, and that he (the landlord) would repair and maintain them. The landlord did, in fact, repair the sill under the living room door, but did not replace the kitchen door sill, where the tenant was subsequently injured during the course of other repairs to the apartment. The Court of Appeals stated, in sustaining the judgment of the trial court:

"It has been definitely established in Ohio that an owner of real estate who has surrendered possession thereof to a lessee is not liable to such lessee, his employees or invitees, for personal injuries from a defective condition of the premises even though he had promised the lessee to make repairs. The test to be applied in every case of this kind is whether the landlord was in possession or control of the premises, or part thereof, the disrepair of which occasioned the injury."

Our conclusion against the proposition urged by appellant thus required of us by these authorities, is consistent with what appears to be the weight of authority in other jurisdictions. In cases involving injuries, usually to children of tender years, arising from falling through defectively installed or absent screens, it has been generally held that no tort liability attaches to the landlord. In a majority of these cases, the rationale of the decisions denying liability proceeded on a determination of the absence of any duty of the landlord to the tenant either to install or repair screens in a fashion to prevent individuals or children from falling through. Examples of these decisions in-

clude: *Chelefou* v. *Springfield Inst. for Savings*, 297 Mass. 236, 8 N. E. 2d 769; *Egan* v. *Krueger* (N. J.), 135 A. 811; *Gustin* v. *Williams*, 62 Cal Reptr. 838; *Gasquoine* v. *Bornstein*, 10 Ill. App. 2d 423, 135 N. E. 2d 121; *Rogers* v. *Sins*, 349 Ill. App. 387, 110 N. E. 2d 643; *Scheffler* v. *Ringhofer*, 67 Ill. App. 2d 222, 214 N. E. 2d 575; *Miller* v. *Woodhead* (N. Y.), 11 N. E. 57; contra, *Shaw* v. *Butterworth*, 327 Mo. 622, 38 S. W. 2d 57, where the landlord undertook to make repairs to the screens and did so in a negligent fashion (cf. *Verplanck* v. *Morgan, supra*). Other decisions denying liability predicate their rulings variously on the absence of any element of foreseeability, *Chelefou* v. *Springfield Inst. for Savings, supra, Weaver* v. *Schneider Realty Company* (Mo.), 381 S. W. 2d 866; on the primary duty which rests on parents or those standing in loco parentis, *Reek* v. *Lutz*, 90 R. I. 340, 158 A. 2d 145, *Jones* v. *United States* (C. C. A. 4), 241 F. 2d 26; and on assumption of the risk, *Jones* v. *United States, supra.*

For the foregoing reasons, we hold appellant's first assignment of error to be without merit. Similarly, we overrule appellant's second assignment of error, predicated upon a theory of maintenance of a nuisance. Calling the situation a nuisance diminishes or alters none of the above requirements incumbent upon appellant to establish in order to state a cause of action. *Taylor* v. *Cincinnati*, 143 Ohio St. 426; *Gasquoine* v. *Bornstein, supra.*

The judgment of the Court of Common Pleas of Hamilton County, Ohio is affirmed.

*Judgment affirmed.*

HESS, P. J., and SHANNON, J., concur.