JASON LAMKIN, a Minor, by his Mother and Next Friend, Carol A. Lamkin, *et al.*, Plaintiffs-Appellees, v. STAN TOWNER *et al.*, Defendants-Appellants.—DUSTIN TROY PACE, a Minor, by his Mother and Next Friend, Robin R. Pace, *et al.*, Plaintiffs-Appellees, v. STAN TOWNER *et al.*, Defendants-Appellants.

Fifth District    Nos. 5—88—0088, 5—88—0094 cons.

Opinion filed October 13, 1989.

Stephen W. Thomson and Charles C. Compton, both ·of Reed, Armstrong, Gorman, Coffey, Thomson & Gilbert, P.C., of Edwardsville, for appellant Stan Towner.

Christopher B. Hunter, of Farrell & Long, P.C., of Godfrey, for appellant Carroll Supply & Service.

Harold A. Donovan and Clark D. Smith, both of Donovan, Rose, Nester & Szewczyk, P.C., of Belleville, for appellant Gallatin Aluminum Products, Inc.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (Stephen R. Swofford, Michael A. Lawder, and Bruce L. Carmen, of counsel), for appellants Joseph Dooling and Kenneth Vanek.

Robert D. Larson, of Smith, Larson, Pitts, Walters & Metz, Ltd., of

East Alton, and Lewis E. Mallott, of Campbell & Mallott, of Godfrey, for appellees.

JUSTICE GOLDENHERSH delivered the opinion of the court:

Defendants, Stan Towner, Pat Dooling (also referred to in the briefs as Pat Dooley, Joe Dooling and Joseph Dooling), Kenneth Vanek, Carroll Supply & Service, and Gallatin Aluminum Products, Inc., appeal from orders of the circuit court of Madison County denying defendants' motions for summary judgment. In this cause, all defendants raise the issue whether the trial court erred in denying their motions for summary judgment.

On March 2, 1983, plaintiff Jason Lamkin, a two-year-old, lived with his mother, Carol A. Lamkin, in an apartment located at 911 East Fifth Street in Alton. On that date, plaintiff Carol A. Lamkin was vacuuming Jason's bedroom on the second floor and had moved Jason's bed underneath the window to vacuum the area where Jason's bed was usually positioned. She had opened the window before vacuuming, but a screen was still in place and covering the space. This was the first time she had ever opened this window. She did not notice anything wrong with the screen in the bedroom, although she had trouble with other screens in the apartment. In her deposition she stated that the screen in her bedroom window was bent and had a tendency to fall out. She never reported this to the landlord.

After Carol moved the bed, Jason stood on top of his bed and was looking out the window at another child who was playing with his toys on the ground below. Carol explained to Jason that he should share his toys, and she sent him into the hallway to play. Carol continued to vacuum. When she turned off the vacuum cleaner, she heard a grunting noise and turned to see Jason's feet going out the window. Jason fell out the window and struck his head on the paved area below. He suffered numerous injuries which are not detailed in the discovery which has been supplied.

On September 1, 1982, plaintiff Dustin Troy Pace, age 18 months, lived with his mother, Robin R. Pace, in an apartment located at 911 East Fifth Street in Alton. On that date, plaintiff Robin R. Pace was on the first floor of her two-story apartment washing her hair. Dustin was also downstairs at a window watching people at a neighbor's party. Dustin's brother was downstairs watching television. Robin went upstairs to dry her hair. When she turned off the hair dryer, she heard something hit. She ran into Dustin's bedroom and saw the screen was off the window. She ran downstairs and outside and found Dustin lying on the ground below. He, too, suffered injuries which

have not been detailed in the provided discovery. Earlier in the day, she had opened the window in question and the screen was in place. She had not experienced any difficulty with the window or the screen in the past. It does not appear that anyone actually witnessed the fall.

According to the building's owner, Stanley Towner, the windows in the building at 911 East Fifth Street in Alton are all the same, with the exception of the bathroom windows, which are smaller. The frames are aluminum with a white baked-on finish. The top half of the window is fixed. Only the bottom goes up and down. The screen is also fixed. It does not slide up and down and only covers the bottom half of the window. There is a shallow channel area at the base of the window into which a screen fits. There are also some triangular clips with a spring that helps keep the window anchored in the bottom ledge.

Stan Towner bought the building from Kenneth Vanek and Joe Dooling on October 15, 1982. Vanek and Dooling had renovated the building at 911 E. Fifth Street in Alton. As part of the renovation, defendant Dooling had ordered window units, including screens, from Dale Carroll. The windows were ordered according to Dooling's specifications. Upon arrival from the manufacturer, the window units were inspected by Dale Carroll and no damage was found. Dale Carroll stated in his deposition that no alterations were made on the window units. They were delivered to Dooling as packaged by the manufacturer.

On February 28, 1985, Jason Lamkin, a minor, by his mother and next friend, Carol A. Lamkin, and Carol Lamkin filed a complaint alleging that on March 2, 1983, Jason sustained personal injury after falling from the second-story window in which the window screen fell out of a rental apartment complex. Plaintiffs named as defendants the owner of the apartment complex, Stan Towner; the rehabilitators of the apartment who put the windows and screens in place, Pat Dooling and Kenneth Vanek; the retailer of the windows and screens, Carroll Supply & Service; and the manufacturer of the window units, Gallatin Aluminum Products, Inc. Also, on February 28, 1985, plaintiffs Dustin Troy Pace, a minor, by his mother and next friend, Robin R. Pace, and Robin R. Pace filed a complaint alleging that on September 1, 1982, Dustin sustained personal injury after falling from the second-story window in which the screen fell out of a rental apartment complex.

Both plaintiffs allege that defendants Stan Towner and Pat Dooling and Kenneth Vanek, a partnership, were negligent in one or more of the following respects: (a) failed to securely and firmly attach the

window screens to the window frames of the apartment building, (b) failed to warn plaintiffs' mothers with regard to the fragile condition of the window screens, and (c) failed to repair or replace the window screens when defendant knew, or should have known, of their fragile nature. With respect to defendants Dooling and Vanek, a partnership, plaintiffs additionally allege that defendants were negligent in that they (d) failed to locate the windows a reasonable and safe distance above the floor level within the apartments.

Both plaintiffs also allege that defendants Carroll Supply & Service and Gallatin Aluminum Products, Inc., were negligent in that the windows and screens were unreasonably dangerous and defective because (a) the screens readily popped out from the frames, (b) the screens were not securely fastened within tracks on the windows, and (c) there were no secure latches, locks, or other devices to fix the window screens to the frames. As a proximate result of one or more of these negligent acts or omissions by defendants, plaintiffs sustained severe and permanent injuries.

Defendants all filed answers to plaintiffs' complaints. Defendants then filed motions for summary judgment based on the absence of any legal duty on their part on which liability could be predicated. Additionally, Carroll Supply & Service filed a motion to dismiss pursuant to section 2—621 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—621). The trial court denied defendants' motions for summary judgment and the motion to dismiss filed by defendant Carroll Supply & Service. On November 18, 1987, defendants filed a motion pursuant to Supreme Court Rule 308 (107 Ill. 2d R. 308). The trial court granted defendants' motion. Both cases have been consolidated for purposes of appeal.

Defendants' only issue on appeal is whether the trial court erred in denying defendants' motions for summary judgment. Defendants specifically argue that in Illinois, a window screen is not required or intended to keep persons from falling out the window in which it was placed. Window screens provide only a way for air and light to enter a room and to keep insects out. Since Illinois courts have consistently held there is no such duty on the part of a landlord to maintain a window screen which will keep minors from falling out, there can be no legal liability on the part of the landlord, the builder, the retailer, or the manufacturer of the screens for negligence for failure to provide a child-proof screen. Defendants essentially rely on the same cases to support their proposition. (*Laster v. Chicago Housing Authority* (1982), 104 Ill. App. 3d 540, 432 N.E.2d 1185; *Scheffler v. Ringhoffer* (1966), 67 Ill. App. 2d 222, 214 N.E.2d 575; *Gasquoine v. Bornstein*

(1956), 10 Ill. App. 2d 423, 135 N.E.2d 121; *Rogers v. Sins* (1953), 349 Ill. App. 353, 110 N.E.2d 643; *Crawford v. Orner & Shayne, Inc.* (1947), 331 Ill. App. 568, 73 N.E. 615.) Plaintiffs respond that defendants' proposition that screens serve the sole purpose of keeping insects out and, therefore, there is no liability when a screen fails causing a child to fall through a window opening is antiquated and fails under modern tort law. The evolution of technology has been such that there is the potential for a child-proof screen. A jury should be allowed to hear evidence of negligence. We agree.

■■ ■ The standards governing whether a summary judgment should be granted are set forth in section 2—1005(c) of the Code of Civil Procedure, which states in pertinent part:

> "The judgment sought shall be rendered without delay if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Ill. Rev. Stat. 1987, ch. 110, par. 2—1005(c).)

Illinois courts have repeatedly emphasized that the purpose of summary judgment is not to try an issue of fact, but to determine whether a triable question of fact exists. (*Hadley v. Witt Unit School District 66* (1984), 123 Ill. App. 3d 19, 23, 462 N.E.2d 877, 881-82.) Summary judgment is a drastic remedy. It must be awarded with caution in order to avoid preempting a litigant's right to trial by jury or his right to fully present the factual basis of a case where a material dispute may exist. (*Holbrook v. Peric* (1984), 129 Ill. App. 3d 996, 473 N.E.2d 531.) In passing on a summary judgment motion, the trial court is therefore required to construe the pleadings, affidavits, depositions and admissions on file strictly against the moving party and liberally in favor of the opponent. (*Wysocki v. Bedrosian* (1984), 124 Ill. App. 3d 158, 164, 463 N.E.2d 1339, 1344.) Only if these materials establish that the movants' entitlement to summary judgment is clear and free from doubt may such a motion be granted. *Fremont Indemnity Co. v. Special Earth Equipment Co.* (1985), 131 Ill. App. 3d 108, 112, 474 N.E.2d 926, 930.

■ In the instant case, the real question is whether plaintiffs' injuries were foreseeable. In order to prevail on a claim of common law negligence, a plaintiff must show a duty owed by defendant to plaintiff, a breach of that duty, and an injury proximately caused by the breach. *Mieher v. Brown* (1973), 54 Ill. 2d 539, 541, 301 N.E.2d 307, 308.

"The law of probable cause holds that an injury which is the

natural and probable consequence of an act of negligence is actionable and such an act is the proximate cause of the injury. The injury which could not have been foreseen or reasonably anticipated as the probable result of an act of negligence is not actionable, and such an act is either a remote cause, or no cause whatever of the injury." *Ney v. Yellow Cab Co.* (1954), 2 Ill. 2d 74, 80, 117 N.E.2d 74, 78-79.

■ Assuming facts most favorable to plaintiffs, we find that a reasonable person could infer that defendants' alleged negligent acts proximately caused plaintiffs' injuries. All defendants had the ability to foresee the potential for a minor falling through a window screen. We agree with plaintiffs that technology over the last 35 to 40 years has advanced. All cases which held that the owner of an apartment building had no duty to maintain a screen in a window of an apartment sufficiently strong to support a tenant's child relied upon the 1947 case of *Crawford v. Orner & Shayne, Inc.* (1947), 331 Ill. App. 568, 73 N.E. 615. The window screens of the 1940's and 50's were clearly different from the screens involved in the instant cases. *Rogers v. Sins* (1953), 349 Ill. App. 353, 110 N.E.2d 643, specifically described the screen which gave way in that case as "of the sliding type which expands to fit the aperture." (349 Ill. App. at 355, 110 N.E.2d at 644.) This is quite different from the screens of today which come as part of the window unit with their own tracks and grooves on which to sit. Furthermore, the fact that the two toddlers fell through the screens within six months of each other in the same building could reasonably imply that there was a defect in the screen or that they were incorrectly installed.

The Illinois Supreme Court has yet to decide whether a landlord has any duty to install and maintain window screens sufficiently strong to withhold the weight of a minor child. We can find no rule by which we are bound that there is absolutely no liability on the part of the landlord, the builder or renovator, the retailer of the window unit, or the manufacturer of the window unit due to a defective screen. On the contrary, in *Rogers v. Sins* (1953), 349 Ill. App. 353, 110 N.E.2d 643, the court held that the evidence presented by the minor plaintiff was insufficient to support the allegations in the complaint and defendants' motion for a directed verdict should have been allowed. The *Sins* court held "[w]e perceive nothing in the testimony from which the jury could properly find that there was anything defective or insecure about the screen, as such." (349 Ill. App. at 356, 110 N.E.2d at 644.) The *Sins* court did not find that a landlord could not be liable; rather, under the facts of that case, the plaintiff did not

present sufficient evidence to withstand a motion for directed verdict.

In authorities from other jurisdictions cited in the Illinois cases defendants cite to this court there is further support for judicial recognition of a purpose for window screens other than just keeping out insects. In *Shaw v. Butterworth* (1931), 327 Mo. 622, 38 S.W.2d 57, the Missouri Supreme Court stated:

> "[W]hile a primary purpose of a window is to admit light and air, and to prevent the entry of objectionable elements, and that of screens to keep out insects while letting in light and air, yet it is common knowledge that a secondary purpose is allocated to windows and screens and that purpose involves ordinary protection against persons falling from the window. [Citation.] It is also common knowledge that a screen, constructed and placed in a window casing in the manner ordinarily done, is sufficiently secure to withstand the pressure of a person leaning against it. It was a jury question as to whether the screen as originally constructed was intended to withstand ordinary pressure." 327 Mo. at 630, 38 S.W.2d at 61.

Likewise, we find that in the instant cases, the trial court's orders denying defendants' motions for summary judgment were appropriate. Plaintiffs should be allowed to present evidence to the jury concerning the facts of this particular case to determine if defendants breached any duty to plaintiffs. There is a question whether these screens were properly in place or whether they were even the correct screens for the windows in question. To grant defendants' motions for summary judgment at this stage of the proceedings would have been premature at best.

■ We also find that the trial court was correct at the time in denying the motion to dismiss of defendant Carroll Supply & Service based upon section 2–621 of the Code of Civil Procedure. (Ill. Rev. Stat. 1987, ch. 110, par. 2–621.) This section allows a seller who has done nothing to create or contribute to a defect who is sued in a products liability action to escape ultimate liability by correctly identifying the manufacturer of a product allegedly causing an injury, death, or damage. (*Sims v. Teepak, Inc.* (1986), 143 Ill. App. 3d 865, 493 N.E.2d 721.) In order to be allowed such protection, the defendant "shall upon answering or otherwise pleading file an affidavit certifying the correct identity of the manufacturer of the product allegedly causing injury, death or damage." (Ill. Rev. Stat. 1987, ch. 110, par. 2–621(a).) In the instant case, defendant Carroll Supply & Service did not file such an affidavit upon answering plaintiffs' complaint. Originally, defendant filed a *pro se* general denial on August

8, 1985. On July 1, 1986, Carroll Supply & Service filed a motion to dismiss based upon the provisions of section 2—621. We do not find this late filing to bar the retailer from raising this issue in a motion to dismiss; however, the trial court could have determined that an issue existed as to whether Carroll Supply & Service had actual knowledge of a defect in the window screen or had itself created the defect. While Dale Carroll stated in his deposition that the window units were not damaged upon their arrival from the manufacturer and that they were not changed while in his possession, the discovery on this issue is sparse, and it was obvious that Dale Carroll could not remember everything about the order of the window units in question and their arrival at defendant's store. If a determination is made that a nonmanufacturer defendant did have actual knowledge of the defect or created the defect, then the nonmanufacturer defendant is not afforded the protection of section 2—621. (Ill. Rev. Stat. 1987, ch. 110, pars. 2—621(c)(2), (c)(3).) Due to the lack of discovery on this issue, the trial court was correct to deny defendant's, Carroll Supply & Service's, motion to dismiss at this time. This does not preclude the retailer from refiling a motion to dismiss based on section 2—621 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—621) after further discovery.

For the foregoing reasons, this court affirms the orders of the circuit court of Madison County denying all defendants' motions for summary judgment and denying defendant's, Carroll Supply & Service's, motion to dismiss.

No. 5—88—0088, Affirmed.
No. 5—88—0094, Affirmed.

LEWIS and HOWERTON, JJ., concur.