JASON LAMKIN, by his Mother and Next Friend, Carol Lamkin, *et al.*, Appellees, v. STAN TOWNER *et al.*, Appellants.—DUSTIN TROY PACE, by his Mother and Next Friend, Robin Pace, *et al.*, Appellees, v. STAN TOWNER *et al.*, Appellants.

*Opinion filed October 4, 1990.—Rehearing denied November 30, 1990.*

514

Stephen W. Thomson and Charles C. Compton, of Reed, Armstrong, Gorman, Coffey, Thomson, Gilbert & Mudge, P.C., of Edwardsville, for appellant Stan Towner.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (Stephen R. Swofford, William F. Kopis and Bruce L. Carmen, of counsel), for appellants Joseph Dooling and Kenneth Vanek.

Christopher B. Hunter, of Farrell & Long, P.C., of Godfrey, for appellant Carroll Supply & Service.

Harold A. Donovan and Clark D. Smith, of Donovan, Rose, Nester & Szewczyk, P.C., of Belleville, for appellant Gallatin Aluminum Products, Inc.

William J. Meacham, of Smith, Larson & Pitts, Ltd., of East Alton, and Robert D. Larson and G. Edward Moorman, of Alton, for appellees.

JUSTICE CLARK delivered the opinion of the court:

The primary issue in this case is whether liability can be imposed under theories of negligence or strict products liability for damages sustained by a child who fell through a window screen.

On September 1, 1982, appellee Dustin Pace, a minor, lived with his mother in an apartment in Alton, Illinois.

Dustin's bedroom was on the second floor of the apartment. That morning, appellee Robin Pace, Dustin's mother, had opened the window in Dustin's bedroom and left the window screen down. From the bathroom on the second floor, Robin heard a sound coming from Dustin's bedroom. Running from the bathroom to Dustin's bedroom, Robin saw that the screen was gone from the window she had opened earlier that day. Robin found Dustin outside, lying on the ground below the open window. The record does not reveal the extent of the minor's injuries.

Appellee Jason Lamkin, also a minor, resided with his mother in the same apartment complex as Dustin and Robin Pace. On March 2, 1983, appellee Carol Lamkin, Jason's mother, was vacuuming Jason's bedroom. Before she began vacuuming, Carol opened a window in the bedroom located on the north wall. An aluminum screen was in place in the window frame. Jason's bedroom was located on the second floor of the building.

Jason's bed was ordinarily positioned along the east wall of the bedroom, but Carol had moved the bed to the north wall to vacuum the perimeter of the room, placing the top of the bed approximately one foot below the bottom of the open window. While Carol vacuumed, Jason climbed on top of the bed and peered out the open window on his hands and knees. As Carol reached to turn off the vacuum, she heard a noise. Turning to determine the origin of the sound, Carol saw Jason's feet as he fell headfirst out the open window, landing on the ground below. The screen was out of the window frame. Again, the record does not reveal the extent of the minor's injuries.

On February 28, 1985, Dustin Pace, by his mother and next friend, Robin Pace, and Robin Pace brought a negligence and products liability action in Madison County for injuries Dustin sustained after falling from

the second-story window of the apartment building in Alton. Jason Lamkin, by his mother and next friend, Carol Lamkin, and Carol Lamkin also filed a negligence and products liability action on February 28, 1985, in Madison County for injuries Jason sustained after falling from the second-story window of the same apartment building in Alton. Named as defendants in appellees' complaints were the owner of the apartment building, appellant Stan Towner; the renovator/builder of the building, appellants Pat Dooling and Kenneth Vanek, a partnership; the manufacturer of the windows and screens, appellant Gallatin Aluminum Products, Inc.; and the retailer of the windows and screens, appellant Carroll Supply & Service.

All appellants filed motions for summary judgment (Ill. Rev. Stat. 1987, ch. 110, par. 2—1005) in both cases based on the absence of any legal duty on their part on which liability could be predicated. The manufacturer also filed a motion to dismiss pursuant to section 2—621 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—621). The trial court denied appellants' motions for summary judgment and the motion to dismiss. On December 18, 1987, the trial court granted appellants' motions for interlocutory appeal in each case pursuant to Supreme Court Rule 308 (107 Ill. 2d R. 308). The cases were consolidated on appeal and the appellate court affirmed the trial court's denial of the motions for summary judgment as well as the motion to dismiss. (190 Ill. App. 3d 631.) We granted appellants' petitions for leave to appeal (107 Ill. 2d R. 315).

In allowing appellants' motions for interlocutory appeal, the trial court certified four questions for review pursuant to Supreme Court Rule 308(a) (107 Ill. 2d R. 308(a)). These questions are as follows:

"a. Whether, as a matter of law, *** a landlord is under any common-law [sic] duty to install and maintain

screens in the windows of the apartments he rents to his tenants, sufficiently strong to support the weight of a tenant's child leaning against such window screen and prevent the child from falling out that window ***.

b. Whether, as a matter of law, *** a renovator/builder of apartments has a common law duty to install and construct screens in the windows of the apartments he renovates and/or builds which are sufficiently strong to support the weight of a tenant's child leaning against such window screen, so as to prevent that child from falling out that window ***.

c. (1) Whether, as a matter of law, *** a window frame and window screen can be defective or unreasonably dangerous because they were not sufficiently strong to support the weight of a child leaning against the window screen so as to serve as the basis for a cause of action for products liability against the retailer distributor-seller of such window frames and window screens ***.

(2) Whether, as a matter of law, the trial court erred in not dismissing [the retailer distributor-seller] pursuant to Section 2—621 of the Illinois Code of Civil Procedure ***.

d. Whether, as a matter of law, *** a window frame and window screen can be defective or unreasonably dangerous because they were not sufficiently strong to support the weight of a child leaning against the window screen so as to serve as the basis for a cause of action for products liability against the manufacturer of such window frames and window screens."

Before proceeding with an examination of these questions, we note that the appellate court opinion failed to address the certified questions individually. Instead, the appellate court reached a general conclusion that there was "liability on the part of the landlord, the builder or renovator, the retailer *** or the manufacturer" (190 Ill. App. 3d at 637) without first determining whether a separate duty existed on the part of each of these individual appellants. Implicit in the restriction that any appeal

pursuant to Rule 308 should be limited to only those questions certified by the trial court (see *Key v. Jewel Cos.* (1988), 176 Ill. App. 3d 91, 99; *State ex rel. Skinner v. Lombard Co.* (1982), 106 Ill. App. 3d 307, 311) is the requirement that those questions must, in fact, be addressed. We turn therefore to a separate review of each of the questions certified by the trial court.

## I. THE LANDLORD'S DUTY

The first question certified by the trial court, and the only issue (other than the retailer's motion to dismiss) discussed by the parties in their briefs and during oral arguments, is the landlord's common law duty to the appellees. An examination of the principles of landlord and tenant law will resolve this issue.

It is an established principle in Illinois that if a landlord retains control of a portion of the premises leased to the tenant, the landlord has the duty, as the party in control, to use ordinary care in maintaining that part of the premises in a reasonably safe condition. (*Rowe v. State Bank* (1988), 125 Ill. 2d 203, 220; *Drewick v. Interstate Terminals, Inc.* (1969), 42 Ill. 2d 345; *Murphy v. Illinois State Trust Co.* (1940), 375 Ill. 310.) Conversely, where a defective condition exists on premises leased to a tenant and under the tenant's control, a landlord is not liable for injuries caused by the condition. (*Rowe*, 125 Ill. 2d at 220-21; *Wright v. Mr. Quick, Inc.* (1985), 109 Ill. 2d 236, 238; *Wagner v. Kepler* (1951), 411 Ill. 368, 371.) As this court noted in *Rowe*:

> " '[t]he lessee acquires an estate in the land, and becomes for the time being both owner and occupier, subject to all of the responsibilities of one in possession, to those who enter upon the land and those outside of its boundaries.' "
> *Rowe*, 125 Ill. 2d at 221, quoting W. Keeton, Prosser & Keeton on Torts §63, at 434 (5th ed. 1984).

An exception to the general rule is where the landlord contracts to keep the property under the tenant's control in repair. (*Mr. Quick*, 109 Ill. 2d at 239.) Having assumed a duty, otherwise absent, to maintain the property in a certain condition, common law liability may arise from the negligent performance of this voluntary undertaking. *Nelson v. Union Wire Rope Corp.* (1964), 31 Ill. 2d 69; see also *Pippin v. Chicago Housing Authority* (1979), 78 Ill. 2d 204 (holding that the Chicago Housing Authority, which owed no duty by statute or common law to protect its tenants from criminal acts, may incur liability when it voluntarily undertakes to hire a firm to provide security services).

In light of these decisions, we conclude that without evidence of the landlord's control of appellees' premises, there is no common law liability for appellees' injuries. (See *Drewick*, 42 Ill. 2d at 350 ("It has long been the law of this State that [the] lessor is liable for injuries which are sustained on premises, or portions thereof, retained in the lessor's control").) The leases for appellees' tenancies, which may provide evidence as to the scope of control, if any, retained by the landlord when he leased appellees' apartments, are absent from the record. Moreover, no evidence has been presented by appellees to suggest that the landlord contracted to keep the property under appellees' control in repair. Absent any evidence to the contrary, therefore, we conclude that the landlord relinquished all control of the leased premises in executing the leases for appellees' tenancies and, with it, any potential common law liability for appellees' injuries.

We recognize that our decision on this single issue is in conformity with a series of Illinois appellate opinions holding that, as a matter of law, there is no duty on the part of a landlord to maintain in any window of an apartment he leases to tenants a screen sufficiently

strong to support the weight of a tenant's minor child leaning against the screen. See *Laster v. Chicago Housing Authority* (1982), 104 Ill. App. 3d 540, 543 (landlord had no duty to repair allegedly defective window screens or otherwise make them "safe against the possibility of children falling out of the window"); *Scheffler v. Ringhofer* (1966), 67 Ill. App. 2d 222 (landlord had no duty to furnish screens that were suitable for anything other than keeping out insects); *Gasquoine v. Bornstein* (1956), 10 Ill. App. 2d 423 (no duty on the part of landlord to maintain a window screen sufficient to support the weight of a minor leaning against it, even if the screen was insecure, defective and likely to fall out when slight pressure was exerted); *Rogers v. Sins* (1953), 349 Ill. App. 353 (landlord had no duty to provide screens which a child could not push out or dislodge); *Crawford v. Orner & Shayne, Inc.* (1947), 331 Ill. App. 568 (no duty on the part of landlords to maintain a window screen sufficient to support the weight of a minor leaning against it, even where minor's parents notified the landlords and their agents that the screen was loose, defective and dangerous and did not fit the window properly).

Our decision on this issue is also consistent with the majority of authority in other jurisdictions. Courts considering injuries sustained by a minor who has fallen through a window screen have generally attached no liability to the landlord, finding no duty on the landlord's part to maintain screens capable of withstanding the weight of a minor leaning against it. Two cases have been before the Massachusetts Supreme Judicial Court and, in both instances, no duty was imposed upon the landlords. (*Markarian v. Simonian* (1977), 373 Mass. 669, 369 N.E.2d 718; *Chelefou v. Springfield Institution for Savings* (1937), 297 Mass. 236, 8 N.E.2d 769.) The New York Court of Appeals has also considered the issue and declined to impose a duty on the landlord (*Miller v.*

*Woodhead* (1887), 104 N.Y. 471, 11 N.E. 57), as have reviewing courts in New Jersey (*Egan v. Krueger* (1927), 103 N.J.L. 474, 135 A. 811), California (*Gustin v. Williams* (1967), 255 Cal. App. 2d Supp. 919, 62 Cal. Rptr. 838 (memorandum decision)) and Ohio (*Riley v. Cincinnati Metropolitan Housing Authority* (1973), 36 Ohio App. 2d 44, 301 N.E.2d 884).

The only court that has concluded that a landlord is liable for injuries a child sustains after falling through a window screen has been the Missouri Supreme Court in *Shaw v. Butterworth* (1931), 327 Mo. 622, 38 S.W.2d 57. Liability was premised on the landlords' agreement to install screens in the plaintiff's apartment that would "prevent the children [from] falling thereout." (*Shaw*, 327 Mo. at 629, 38 S.W.2d at 61.) The *Shaw* court premised liability on the landlords' voluntary assumption of a duty, otherwise absent, and the negligent fulfillment of that duty:

> "Clearly in this case plaintiff's mother during the rental negotiations advised the defendants that she had small children, and demanded the placing of screens in the windows to prevent the children falling thereout. The defendants promised to put them in and this promise became a covenant of the rental contract." (*Shaw*, 327 Mo. at 629-30, 38 S.W.2d at 61.)

Appellees quote extensively from the *Shaw* decision in their briefs to this court but fail to make the critical distinction between the circumstances surrounding the *Shaw* decision and the circumstances surrounding the instant cases. The independent covenant in *Shaw*, which became part of the rental contract, created a duty on the part of the landlords; where no covenant existed, no duty was created. The distinction was essential to the *Shaw* opinion:

> "As plaintiff's mother advised the defendants that she desired the screen to protect her little ones against fall-

ing out, and as defendants placed the screen in the window *pursuant to their promise*, we think the evidence tends to show that defendant's [*sic*] contract comprised the inclusion of a screen ordinarily *fit for that purpose*." (Emphasis added.) (*Shaw*, 327 Mo. at 630, 38 S.W.2d at 61.)

*Shaw* then is consistent with our earlier observation that where a landlord assumes a duty, otherwise absent, common law liability may arise where the duty is negligently fulfilled. As the ·instant cases do not present these circumstances, no duty has been undertaken and no liability can therefore be imposed.

## II. THE RENOVATOR/BUILDER'S DUTY

The second question certified by the trial court asks whether the renovator/builder owes a common law duty to the appellees to install child-proof window screens. This court, in *Lance v. Senior* (1967), 36 Ill. 2d 516, 518, identified four factors to be considered in determining whether the law imposes a duty in a negligence action. The factors are the foreseeability of the injury, the likelihood of injury, the magnitude of the burden of guarding against the injury and the consequences of placing that burden on the defendant. *Lance*, 36 Ill. 2d at 518.

We first consider the foreseeability of the injuries. We agree with the appellate court's observation that the injuries were foreseeable, but disagree with the court's statement that "[i]n the instant case, the real question is whether [appellees'] injuries were foreseeable." (190 Ill. App. 3d at 636.) While the foreseeability of an injury is an important factor in determining whether a duty exists, we have held that "the existence of a legal duty is not to be bottomed on the factor of foreseeability alone." (*Cunis v. Brennan* (1974), 56 Ill. 2d 372, 375.) Instead, as we have explained, we must balance the foreseeability

of the harm against the burdens and consequences that would result from recognition of a duty in these cases.

The magnitude of the burden in this case involves a review of the additional time and expense, if any, that would be imposed if the renovator/builder were required to install in apartments the type of screens described by appellees. Before we consider these factors, however, we must consider whether the type of screen described by appellees is available.

The appellate court observed that "the evolution of technology has been such that there is the potential for a child-proof screen." (190 Ill. App. 3d at 635-36.) We find, however, that the appellate court's statement is without substantive or evidentiary merit. Appellees have provided no affidavits, depositions, testimony or other evidentiary materials on the subject. There is absolutely no basis in the record for the appellate court's statement.

In our capacity as a reviewing forum, this court serves no function as a fact-finding body. We are obliged to rely solely on the evidence contained in the record of the proceedings below. Coming to us on motions for summary judgment and a motion to dismiss, the record we are presented with contains limited information with regard to the composition and construction of the screens in the instant cases and contains no information with regard to the technological capabilities of designing and constructing the type of screen described by appellees. In considering the burden on a renovator/builder in installing such a screen, it is necessary to hear and review evidence that such a screen can in fact be created.

Even if the potential for such a screen does indeed exist, consideration must then be given to the factors which would make installation of the screens burdensome to a renovator/builder. For example, the cost to purchase such a screen as well as the additional cost, if any, to install the screen, as compared to the cost of in-

stalling a screen that is not child-proof, affect the burden on a renovator/builder should the duty be imposed. The evidence may show that the additional costs a renovator/builder incurs in procuring screens of this nature are negligible, or, if significant, are economically and socially prudent. We are, however, unable to reach that conclusion without any evidence before us.

The difficulties of installing the screen must be also considered. A screen capable of withstanding the weight of a minor leaning against it would conceivably require more installation time or attention, which, by themselves, are factors contributing to the burden on a renovator/builder. Considered with the added construction/renovation costs possibly involved in the installation of child-proof screens, the number of variables added to the duty equation multiplies.

It would seem, therefore, that our review of the instant cases is halted at this point by necessity; remand of the causes to the trial court would appear to be required to hear evidence as to both the potential for the creation of a screen described by appellees as well as evidence of the added costs and time requirements on a renovator/builder. There is, however, one additional variable in the duty issue which we conclude answers the question without necessitating remand of the instant cases to the trial court for resolution of this issue. This variable is the consequences that would result if this court were to recognize a duty to install child-proof window screens.

Imposition of a duty to install child-proof window screens would have overwhelming economic and social consequences on every apartment renovator/builder in Illinois. If all apartment renovators/builders were required to install the types of screens required by appellees, a potential consequence would be to cease installing windows in apartment buildings or, at a minimum, to cease

to install windows that open. The costs of building and renovating apartment buildings in conformity with the decision could be significant and the cost of testing and/ or upgrading the window screens currently in all the apartment buildings in Illinois would be equally staggering. Even in the event the added costs were assumed by the renovator/builder, implementing the decision would be nearly impossible. We are unable to say whether there are even the people with the expertise or the equipment with the capabilities to implement such a program.

Likely, too, is the application of this decision to the renovator/builder of residential homes. The prevailing concern or interest sought to be protected by the court in these cases is the safety of minors. Whether a minor falls through a window screen installed in a window found in an apartment or in a house is irrelevant, so to limit application of the duty to apartment renovators/ builders is illogical. It is concern for the safety of the minor which is common to both situations, not the location of the screens.

While we decline in this instance to impose the duty requested by the appellees, we acknowledge that the concept of a duty in this area of the law is a "very involved, complex and indeed nebulous" concept. (*Mieher v. Brown* (1973), 54 Ill. 2d 539, 545.) Recently, the court has not only had the opportunity to examine the parameters of the concept of duty in a negligence case, but has in fact defined a duty where previously the law was silent. See *Ward v. K mart Corp.* (1990), 136 Ill. 2d 132; *O'Hara v. Holy Cross Hospital* (1990), 137 Ill. 2d 332.

*Ward* involved an action for damages the plaintiff sustained when he walked into a concrete post located immediately outside a customer entrance to a department store operated by the defendant, K mart Corporation. This court held that the defendant's duty to exercise reasonable care extended to the risk that one of its

customers would collide with the post while leaving the store carrying a large, bulky item. (*Ward*, 136 Ill. 2d at 157.) Two concrete posts, both approximately 5 feet high and 3 feet apart, were positioned on either side of the customer entrance to the department store. Upon exiting the store, the plaintiff collided with the posts, sustaining head and eye injuries. Plaintiff was carrying a package which was approximately 5 feet long and 1½ feet wide when he left the store. *Ward*, 136 Ill. 2d at 138.

In considering the defendant's duty, if any, to the plaintiff, this court observed that "it was reasonably foreseeable that a customer would collide with the post while exiting defendant's store carrying merchandise which could obscure view of the post" and that "[i]t was also reasonably foreseeable that a customer carrying a large item which he had purchased in the store might be distracted and fail to see the post upon exiting through the door." (*Ward*, 136 Ill. 2d at 154.) This court also noted "that injury of the type suffered by plaintiff is a likely result of collision with a concrete post" which could be corrected at only a "slight" burden to the defendant. (*Ward*, 136 Ill. 2d at 156, 154.) A simple warning or relocation of the posts could have effectively guarded against the danger. (*Ward*, 136 Ill. 2d at 156.) On balance, therefore, we extended defendant's duty of reasonable care to encompass the risk that one of its customers, while carrying a large, bulky item, would collide with the post upon exiting through the customer door.

Unlike the instant cases, the consequences of imposing the duty on the defendant in *Ward* were of minimal economic impact on the parties before the court. The defendant in *Ward* had to do nothing more than erect a "simple warning" (*Ward*, 136 Ill. 2d at 156) to customers alerting them to the placement of the posts or

simply relocate or remove the posts altogether. Application of the decision industry-wide is economically feasible and enforcement is manageable, qualities not found in the creation of the duty in the instant cases.

In *O'Hara*, we held that an emergency room of a hospital has a duty to protect a nonpatient from fainting once the nonpatient is invited to participate in the care and treatment of the patient. The plaintiff brought her young son into the emergency room of defendants' facilities for treatment of a facial laceration. The nurse attending the child invited plaintiff to accompany her son into the emergency room. During the course of the treatment her son received, plaintiff was requested and allowed to participate in the care of her son. Subsequent to witnessing some of the medical treatment administered to her son, plaintiff fainted, hit her head and eventually suffered necrosis of brain cells in the area of the injury. *O'Hara*, 137 Ill. 2d at 335.

The physician treating the child in the emergency room testified at trial that it is foreseeable that a bystander could become ill by viewing emergency room procedures. (*O'Hara*, 137 Ill. 2d at 340.) We observed that while such an occurrence is indeed reasonably foreseeable, it becomes "even more foreseeable" and the likelihood "increases" when the bystander assumes the role of participant in the treatment. (*O'Hara*, 137 Ill. 2d at 342.) Further, we noted that the burden of guarding against the danger and the consequences of placing that burden on an emergency room are "minimal, because an emergency room should not have to enlist the aid of a nonpatient bystander." (*O'Hara*, 137 Ill. 2d at 342.) In balancing the considerations made in deciding the duty issue, this court concluded that it is "consistent with public policy to place a duty on an emergency room to protect a nonpatient from fainting once that person is invited to participate in the care and treatment of the pa-

tient." (*O'Hara*, 137 Ill. 2d at 342.) We do not reach the same conclusion after balancing the considerations in the instant cases and decline to impose upon the renovator/builder the duty to install child-proof screens.

## III. THE RETAILER'S AND MANUFACTURER'S DUTY

The trial court certified two separate questions focusing on appellees' products liability approach to the retailer's and manufacturer's liability. Because the analysis is the same for both appellants, we consider both issues here.

This court has indicated that strict products liability in Illinois follows the formulation set forth in section 402A of the Restatement (Second) of Torts (1965), which imposes strict liability upon one "who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property." (*Rios v. Niagara Machine & Tool Works* (1974), 59 Ill. 2d 79; *Martin v. Harrington & Richardson, Inc.* (7th Cir. 1984), 743 F.2d 1200 (applying Illinois law).) A product is "unreasonably dangerous" when it is "dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." (*Palmer v. Avco Distributing Corp.* (1980), 82 Ill. 2d 211, 216, quoting Restatement (Second) of Torts §402A, comment *i* (1965); *Hunt v. Blasius* (1978), 74 Ill. 2d 203, 211-12.) A product may be unreasonably dangerous in one of two ways: because of (1) a design or manufacturing defect or (2) a failure to warn of a danger posed by the product of which the average consumer would not be aware. (See *Martin*, 743 F.2d at 1202.) A nondefective product that presents a danger that the average consumer would recognize does not give rise to strict liability. See *Hunt*, 74 Ill. 2d 203.

A plaintiff may demonstrate that a product is defective in design, so as to subject a retailer and a manufacturer to strict liability for resulting injuries, in one of two ways: (1) by introducing evidence that the product failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner or (2) by introducing evidence that the product's design proximately caused his injury and the defendant fails to prove that on balance the benefits of the challenged design outweigh the risk of danger inherent in such designs. See generally *Palmer v. Avco Distributing Corp.* (1980), 82 Ill. 2d 211, 219-20, citing *Barker v. Lull Engineering Co.* (1978), 20 Cal. 3d 413, 427-28, 573 P.2d 443, 452, 143 Cal. Rptr. 225, 234-35.

There has been no evidence presented in the form of affidavits, depositions, testimony or other evidentiary materials to support a finding on a motion for summary judgment that the window screens failed to perform as safely as an ordinary consumer would expect when *used* in an intended or reasonably foreseeable manner. Window screens are designed to allow air and light into an area while preventing insects from entering. (*Scheffler*, 67 Ill. App. 2d at 225 ("[I]t is settled law that a landlord has no duty to furnish screens suitable for anything other than keeping out insects"); *Gasquoine*, 10 Ill. App. 2d at 425 (" '[A] primary purpose *** of screens [is] to keep out insects while letting in light and air' ").) They may, on occasion, serve to prevent an individual from falling from a window, but this purpose is incidental to their *intended* use. (*Crawford*, 331 Ill. App. at 574 (" 'A screen in a window, obviously and of common knowledge, is not placed there for the purpose of keeping persons from falling out of a window' "), quoting *Egan*, 103 N.J.L. at 476, 135 A. at 812.) Virtually any manufactured product can cause or be a proximate cause of injury if put to certain uses or misuses (*Hunt*, 74 Ill. 2d at

211), but strict liability applies only when the product is " 'dangerous to an extent beyond that which would be contemplated by the ordinary [person] ***, with the ordinary knowledge common to the community as to its characteristics' " (*Palmer*, 82 Ill. 2d at 216, quoting Restatement (Second) of Torts §402A, comment *i* (1965); see also *Hunt*, 74 Ill. 2d at 211-12).

The window screens were simply serving the purpose for which they were created when the accidents occurred. Even assuming that "the ordinary [person]" may recognize the potential for a screen to restrict a fall from a window, we cannot conclude that, in the event a window screen fails to prevent the fall of a minor leaning against it, "the ordinary [person]" would consider the screen dangerous beyond his original contemplation of the product. A consumer may rightfully expect a product to safely do the job for which it was built or for a foreseeable similar use, but neither a retailer nor a manufacturer can be held strictly liable for injuries resulting from the misuse of its product.

Likewise, there has been no evidence presented in the form of affidavits, depositions, testimony or other evidentiary materials to support a finding on a motion for summary judgment that the window screens' *design* proximately caused appellees' injuries. Appellees allege in their complaints that:

"(a) The screens readily popped out from the frames;

(b) The screens were not securely fastened within tracks on the windows;

(c) There are no secure latches, locks or other devices to fix the window screens to the frames."

Appellees fail to provide evidence of how the window screens' design could have been altered to create a safer screen, such as the one described by appellees, or any evidence of the form and feasibility of the alternative screen design. (See, *e.g., Palmer*, 82 Ill. 2d at 218.) In

light of appellees' failure to provide any evidence to support their allegations, we cannot conclude that, as a matter of law, the window screens are "defective or unreasonably dangerous" such as to serve as the basis for a products liability action against the retailer or manufacturer of such window frames and window screens.

## IV. SECTION 2—621 MOTION TO DISMISS

In addition to filing a motion for summary judgment the retailer seeks to be dismissed from the instant cases pursuant to section 2—621 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—621). Section 2—621 mandates the dismissal of a "nonmanufacturer" from an action based on products liability if the "nonmanufacturer" meets the criteria of the section ("Once the plaintiff has filed a complaint against the manufacturer *** and the manufacturer *** [has] answered or otherwise pleaded, the court *shall* order the dismissal of a strict liability in tort claim against the certifying defendant" (emphasis added) (Ill. Rev. Stat. 1987, ch. 110, par. 2—621(b))). Subsection (c) provides that a court *shall not* order the dismissal of the "nonmanufacturer" defendant where the plaintiff demonstrates evidence of, *inter alia*, the defendant's control over the design or manufacture of the product, actual knowledge of the defect in the product, or creation by the defendant of the defect in the product. Ill. Rev. Stat. 1987, ch. 110, pars. 2—621(c)(1) through (c)(3).

Dale E. Carroll filed a *pro se* answer and general denial on August 8, 1985. No supporting affidavits or other evidentiary materials accompanied the filing. Appellees filed an amended complaint on August 9, 1985, adding Gallatin Aluminum Products, Inc., as the manufacturer of the window screens, to the original complaint. On July 1, 1986, Dale E. Carroll, d/b/a Carroll Supply & Service, represented by counsel, filed a motion to dismiss pursu-

ant to section 2—621 with supporting excerpts from the affidavit of Dale E. Carroll denying control over the design or manufacture of the product, actual knowledge of the defect in the product, or the creation of the defect in the product, as well as excerpts from the depositions of Towner and Vanek. Appellees failed to respond in any way to the retailer's evidence.

The appellate court affirmed the trial court's dismissal of the retailer's motion to dismiss, observing that "the trial court could have determined that an issue existed as to whether Carroll Supply & Service had actual knowledge of a defect in the window screen or had itself created the defect." (190 Ill. App. 3d at 639.) The retailer's affidavit explicitly states both that "[Dale E. Carroll] had no actual knowledge of any defects in the window which allegedly caused [appellees'] injuries" and that "[Dale E. Carroll] did nothing which would have created the alleged defect in the windows which allegedly caused [appellees'] injuries." Moreover, appellees failed to demonstrate any evidence of the retailer's control, knowledge or participation in the creation of the alleged defect in the window screens. See Ill. Rev. Stat. 1987, ch. 110, pars. 2—621 (c)(1) through (c)(3).

Contrary to the appellate court, there is no issue as to the retailer's actual knowledge or creation of the defect in the window screens. Well-alleged facts within an affidavit must be taken as true when they are not contradicted by counteraffidavits. (See *Conroy v. Andeck Resources '81 Year-End Ltd.* (1985), 137 Ill. App. 3d 375.) The retailer's affidavit, in fact, was drafted in direct response to the exceptions provided in section 2—621(c).

Moreover, the language of section 2—621 makes dismissal of the "nonmanufacturer" mandatory when that party complies with the requirements of the section. We conclude, therefore, that, as a matter of law, the trial

court erred in not dismissing the retailer distributor-seller pursuant to section 2—621 of the Code of Civil Procedure.

For the foregoing reasons, we reverse the judgments of the appellate and circuit courts, and remand the causes to the circuit court for further proceedings consistent with this opinion.

*Judgments reversed;*
*causes remanded.*