PHILLIP SCOBY, Plaintiff-Appellant, v. VULCAN-HART CORPORATION, Defendant-Appellee.

Fourth District   No. 4—90—0491

Opinion filed March 28, 1991.

Jeffrey W. Tock, of Phebus, Tummelson, Bryan & Knox, of Urbana, and Michael J. Tague, of Franklin, Flynn & Palmer, of Champaign, for appellant.

D. Cameron Dobbins, of Dobbins, Fraker, Tennant, Joy & Perlstein, of Champaign, for appellee.

JUSTICE GREEN delivered the opinion of the court:

On October 14, 1986, plaintiff Phillip Scoby filed a complaint in the circuit court of Champaign County against defendant Vulcan-Hart Corporation seeking damages for personal injuries. As is before us, plaintiff's complaint sounded in the tort of strict liability for defective product. He alleged he was injured when he was working in a restaurant kitchen, fell, and his arm became submerged in hot oil contained in an open deep-fat fryer manufactured by defendant.

On January 9, 1989, the day the case was originally set for trial, defendant filed a motion for summary judgment, which was granted by the trial court. Plaintiff appealed, and this court reversed the judgment for failure to give proper notice and remanded to the trial court. (*Scoby v. Vulcan-Hart Corp.* (1989), 188 Ill. App. 3d 89, 544 N.E.2d 106.) Upon return to the trial court, defendant renewed its motion for summary judgment. The motion was granted on May 9, 1990, and reconsideration was denied on July 2, 1990. Plaintiff appeals.

■■ Section 2—1005(c) of the Code of Civil Procedure (Code) provides that summary judgments shall be rendered "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Ill. Rev. Stat. 1989, ch. 110, par. 2—1005(c).) In a case where the

foregoing material constitutes "all of the evidence before the court and upon such evidence there would be nothing left to go to a jury, and the court would be required to direct a verdict," a summary judgment is then proper. *Fooden v. Board of Governors of State Colleges & Universities* (1971), 48 Ill. 2d 580, 587, 272 N.E.2d 497, 500.

Plaintiff's deposition indicated (1) on the night he was injured, plaintiff was employed as a cook with Chi Chi's restaurant in Champaign; (2) he slipped, lost his balance, fell, and immersed his right arm up to his elbow in the vat of hot oil; and (3) although the fryer was turned off, the oil contained within the fryer was still hot enough to cause burns to plaintiff's arm.

The parties have agreed and stipulated to the following facts: (1) the deep-fat fryer in which plaintiff burned his arm was manufactured by defendant Vulcan-Hart and sold to defendant N. Wasserstrom & Sons, Inc., in 1984 for the price of $834. N. Wasserstrom then sold the same fryer to Chi Chi's restaurant in 1984 for the price of $918; (2) at the time Vulcan-Hart sold the deep-fat fryer in question, it manufactured two covers for the fryer, referred to as a simmer cover and a tank cover; and (3) the simmer cover was manufactured by Vulcan-Hart at a cost of $12.70 each and was offered by Vulcan-Hart as optional equipment for the fryer in question at the price of $150 per cover. A simmer cover had been available from Vulcan-Hart since 1969.

In addition, the parties stipulated that (1) if a simmer cover had been in place and in the down position on the fryer at the time plaintiff slipped and fell, his hand would not have come into contact with the oil in the fryer; and (2) the cover was not sold with the machine as standard equipment but was available as an extra to create a "saturated atmosphere" for frying certain products, particularly chicken. The function of the cover was to trap moisture in the product being cooked. For example, the "original recipe" Kentucky Fried Chicken would be used under a similar cover while the "extra crispy" Kentucky Fried Chicken would be used in an open fryer to achieve the desired crispness. The simmer cover was not designed, manufactured, marketed, or sold by Vulcan-Hart as a safety device.

Further, stipulation was made that (1) the tank cover was manufactured by Vulcan-Hart at a cost of $6.44 each and was offered by Vulcan-Hart as optional equipment for the fryer in question at a price of $64 per cover; (2) the tank cover was available from Vulcan-Hart since 1980; (3) if a tank cover had been in place on the fryer at the time that plaintiff slipped and fell, it might have prevented his hand from coming into contact with the oil in the fryer; and (4) the purpose

of the tank cover was to be placed over the fryer after it had been turned off and the cooking oil or lard had cooled down to prevent vermin from getting into the oil or lard. The tank cover was a specialty item and was not designed, manufactured, marketed, or sold by Vulcan-Hart as a safety device.

■■ Thus, no dispute exists as to the underlying facts, and the question presented is whether a judgment for plaintiff could stand under the facts. At issue is the question of whether the recited facts could give rise to a cause of action by plaintiff against defendant in strict liability for a defective product. As stated most recently by the supreme court, "Illinois follows the formulation set forth in section 402A of the Restatement (Second) of Torts (1965), which imposes strict liability upon one 'who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property.' " (*Lamkin v. Towner* (1990), 138 Ill. 2d 510, 528, 563 N.E.2d 449, 457.) As we indicated in our previous opinion, the trial court originally granted summary judgment to the defendant, following the rule in *Hunt v. Blasius* (1978), 74 Ill. 2d 203, 384 N.E.2d 368, that the dangerous nature of the open fryer without a top to keep portions of people's bodies from coming into contact with the hot contents was so obvious that, as a matter of law, plaintiff could not recover. The criterion used by the court was the consumer-user contemplation test set forth in section 402A of the Restatement (Second) of Torts. (See Restatement (Second) of Torts §402A, comment *i* (1965).) Under the test, a product's design is defective and unreasonably dangerous when the danger it presents is not obvious to the consumer or user. In addition to being applicable in *Hunt*, this test has been followed in theory by the supreme court in *Dunham v. Vaughan & Bushnell Mfg. Co.* (1969), 42 Ill. 2d 339, 247 N.E.2d 401.

■ On remand, the trial court made the same ruling as before for the same reason. Clearly, the dangerous nature of the open fryer containing hot oil was obvious to plaintiff's employer, who was the ultimate consumer of the fryer, and that same danger was also obvious to plaintiff. However, plaintiff maintains now, as he did before, that a product may be found to be defective and unreasonably dangerous when a safer design for the product is practical and effective, and can be provided at a reasonable cost. This criterion for determining liability for defective product has been described by a leading authority on torts as the "danger-utility" test. (See W. Keeton, Prosser & Keeton on Torts §99(3), at 699-700 (5th ed. 1984).) Some aspects of that test were applied by the supreme court in *Palmer v. Avco Distributing Corp.* (1980), 82 Ill. 2d 211, 412 N.E.2d 959, *Kerns v. Engelke* (1979),

76 Ill. 2d 154, 390 N.E.2d 859, and *Anderson v. Hyster Co.* (1979), 74 Ill. 2d 364, 385 N.E.2d 690.

The danger-utility test is described in these words:

"Under this approach, a product is defective as designed if, but only if, the magnitude of the danger outweighs the utility of the product. The theory underlying this approach is that virtually all products have both risks and benefits and that there is no way to go about evaluating design hazards intelligently without weighing danger against utility. There have been somewhat different ways of articulating this ultimate standard or test. But in essence, the danger-utility test directs attention of attorneys, trial judges, and juries to the necessity for weighing the danger-in-fact of a particular feature of a product against its utility. Under this test, a product can be said to be defective in the kind of way that makes it 'unreasonably dangerous' if a reasonable person would conclude that the danger-in-fact, whether foreseeable or not, outweighs the utility of the product. There are three primary reasons for so concluding: (1) the harmful consequences in fact from intended and reasonably foreseeable uses resulting from the way the product was designed and marketed up to the time of plaintiff's injury outweighed the benefits in terms of wants, desires, and human needs served by the product; (2) although the harmful consequences in fact did not exceed the benefits, alternative products were available to serve the same needs or desires with less risk of harm; (3) although the harmful consequences did not outweigh the benefits, there was a feasible way to design the product with less harmful consequences. Most of the products liability litigation related to design hazards has been concerned with the feasibility of a safer alternative design." W. Keeton, Prosser & Keeton on Torts §99(3), at 699-700 (5th ed. 1984).

■ In the past, the supreme court has described the appropriate test for a defectively designed product case to be a test similar to the consumer-user contemplation test or one similar to the danger-utility test. In *Lamkin*, for the first time, that court held that ordinarily such a cause of action can be proved under either test. There, suit was brought for injuries to a small child who had fallen through a screened-in window in an apartment house. The theory of the suit was that the screens should have been strong enough to prevent the child from going through the screen. One count was against the manufacturer of the screens. The propriety of the trial court's denial of a summary judgment to the manufacturer was before the supreme court

pursuant to interlocutory appeal under Supreme Court Rule 308 (134 Ill. 2d R. 308). The supreme court held summary judgment should have been granted the manufacturer. The court applied both tests, holding (1) the inability of the screens to hold back a child was obvious to all consumers and users, and (2) no feasibility of any alternate screen design was shown.

In describing the test to be applied, the *Lamkin* court stated:

"A plaintiff may demonstrate that a product is defective in design, so as to subject a retailer and a manufacturer to strict liability for resulting injuries, in one of two ways: (1) by introducing evidence that the product failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner or (2) by introducing evidence that the product's design proximately caused his injury and the defendant fails to prove that on balance the benefits of the challenged design outweigh the risk of danger inherent in such designs. See generally *Palmer v. Avco Distributing Corp.* (1980), 82 Ill. 2d 211, 219-20, citing *Barker v. Lull Engineering Co.* (1978), 20 Cal. 3d 413, 427-28, 573 P.2d 443, 452, 143 Cal. Rptr. 225, 234-35." *Lamkin*, 138 Ill. 2d at 529, 563 N.E.2d at 457.

The *Lamkin* court later stated that the purpose of the screens was to keep out insects and not to keep people from falling out the window. The court then stated:

"Virtually any manufactured product can cause or be a proximate cause of injury if put to certain uses or misuses (*Hunt*, 74 Ill. 2d at 211), *but strict liability applies only* when the product is ' "dangerous to an extent beyond that which would be contemplated by the ordinary [person] \*\*\*, with the ordinary knowledge common to the community as to its characteristics" ' (*Palmer*, 82 Ill. 2d at 216, quoting Restatement (Second) of Torts §402A, comment *i* (1965); see also *Hunt*, 74 Ill. 2d at 211-12.)" (Emphasis added.) (*Lamkin*, 138 Ill. 2d at 529-30, 563 N.E.2d at 458.)

We do not take the foregoing to negate the intent of *Lamkin* that usually both tests should be applied.

Defendant recognizes the adoption in *Lamkin* of the dual test for determining defective design. However, defendant points out that the *Lamkin* court relied heavily on the decision of the supreme court of California in *Barker v. Lull Engineering Co.* (1978), 20 Cal. 3d 413, 573 P.2d 443, 143 Cal. Rptr. 225. There, that court pointed out that a number of decisions of the appellate courts of California had held a

product can be found defective in design even though consumer expectations have been met "if through hindsight the jury determines that the product's design embodies *'excessive preventable danger,'* or, in other words, if the jury finds that the risk of danger \*\*\* outweighs the benefits of such design." (Emphasis added.) (*Barker*, 20 Cal. 3d at 430, 573 P.2d at 454, 143 Cal. Rptr. at 236.) Defendant maintains that here, the danger presented by not having a top for the fryer was not "excessive" and the danger-use test should not be applied.

Defendant's concern with the use of the danger-utility test here is well taken. The mechanics involved are simple. Very hot liquid is, of course, quite dangerous, but the danger was very obvious to both the defendant and the plaintiff. Clearly, at times, efficient kitchen operation would require keeping a top off of the fryer. Defendant draws analogy to a sharp kitchen knife that might be on a table. It asks whether a manufacturer of the knife could be strictly liable if somebody were cut by the knife if the manufacturer did not furnish with the knife, as a usual part and advertised as a safety factor, a sheath to cover the blade of the knife. The analogy is appropriate. Many manufactured products have a potential to cause substantial injury, and most can be made safer by a different design.

■■ ■ We do not deem that *Lamkin* or other cases applying aspects of the danger-utility test intend that all manufacturers of products described above should be subject to liability depending upon a trier of fact's balancing under that test, when suit is brought by one injured by such a product. Somewhere, a line must be drawn beyond which the danger-utility test cannot be applied. Considering not only the obvious nature of any danger here but, also, the simple nature of the mechanism involved, we conclude the circuit court properly applied only the consumer-user contemplation test. Under that test, summary judgment for the defendant was clearly proper.

■■ ■ Defendant also maintains that plaintiff's fall was the sole proximate cause of his injury and any danger in the open fryer containing hot liquid was merely a condition. We cannot agree. The likelihood that a person working in a restaurant establishment will likely have part of his body come in contact with a fryer in the working area is readily foreseeable. As this court stated in *Reed v. Danville Concrete Products Co.* (1981), 102 Ill. App. 3d 205, 429 N.E.2d 605: (1) the existence of proximate cause is largely a jury question; and (2) the difference between causes and conditions is no longer deemed an important tool in analyzing causation. As this court pointed out there, Illinois Pattern Jury Instruction, Civil, No. 15.01 (2d ed. 1971) describes "proximate cause" as that which "in natural or probable se-

quence, produced the injury complained of." (See also W. Keeton, Prosser & Keeton on Torts §42 (5th ed. 1984).) The record here falls far short of showing, as a matter of law, that the failure of defendant to provide a cover for the fryer could not be a proximate cause of plaintiff's injuries.

■■ However, proximate cause does not create a right to recover absent the existence of a tort. Accordingly, the judgment of the circuit court granting summary judgment to the defendant is affirmed.

Affirmed.

SPITZ and KNECHT, JJ., concur.