Stephen C. SCACCIANOCE and Kellie L. Scaccianoce, Plaintiffs–Appellants,

v.

HIXON MANUFACTURING & SUPPLY COMPANY and Commonwealth Edison Company, Defendants–Appellees.

No. 94–1999.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 8, 1994.

Decided June 16, 1995.

Rehearing and Suggestion for Rehearing En Banc Denied July 21, 1995.

Stephen P. Carponelli (argued), James E. Hussey, Albert M.T. Finch, III, Carponelli & Krug, Chicago, IL, for Stephen C. Scaccianoce, Kellie L. Scaccianoce.

Francis Spina (argued), Thomas R. Pender, Tressler, Soderstrom, Maloney & Priess, Chicago, IL, for Hixon Mfg. & Supply Co.

Robert Guritz (argued), Commonwealth Edison Co., Chicago, IL, for Commonwealth Edison Co.

Before COFFEY and RIPPLE, Circuit Judges, and SKINNER, District Judge.[*]

SKINNER, District Judge.

The plaintiff Stephen Scaccianoce ("the plaintiff") was working as a surveyor's helper when he was injured. He was using a surveyor's device called a prism pole, manufactured by the defendant Hixon Manufacturing & Supply Company ("Hixon"). A prism pole is used to enable a surveyor to sight lines where there are obstructions, such as underbrush, at ground level. It consisted in this case of a telescoping pole, which extends to 25 feet, with a prism mounted on the top designed to reflect a laser beam to an electronic surveying device, which registers the required angles and distances. The pole is also equipped with a levelling bubble at the height of the operator's chest so that the

---

[*] The Honorable Walter Jay Skinner, of the District of Massachusetts, is sitting by designation.

operator can ensure that the pole is vertical and accurately marks the point on the ground which is being located for the survey.

The particular pole used by the plaintiff was made of aluminum. It bore a label which read "DANGER. THIS POLE CONDUCTS ELECTRICITY. Do not use in stormy weather or around overhead wires. DO NOT use OIL on this pole." While the plaintiff was using the bubble level to adjust the pole, he accidentally struck an uninsulated overhead power line owned by Commonwealth Edison Company ("Edison") and was severely injured by a charge of electrical power which travelled down the pole and into his body.

In this action the plaintiff seeks damages from Hixon on the grounds that there was insufficient warning on the pole of the dangers of its use near overhead power lines, and that the pole was negligently designed by reason of the conductive material used in its manufacture. He originally sought damages from Edison on the grounds that there was no warning at or near the site, that the overhead power lines were uninsulated, and that weatherproofing on the lines deceptively created the appearance that they were in fact insulated. At oral argument, however, counsel narrowed his claim to the deceptive presence of weatherproofing. The claim against Edison is also cast under the rubric of product liability, the alleged "products" being the electricity and the wires. The plaintiff proceeded on the twin theories of negligence and strict liability against both defendants. The plaintiff's wife, Kellie L. Scaccianoce, has brought parallel claims for loss of consortium.

The district court, approving a magistrate judge's recommendation, allowed motions for summary judgment on behalf of both defendants against the plaintiff and his wife, and judgment was entered thereon. The plaintiff and his wife appeal from this judgment.

## I. *The case against Edison.*

The bases for the district court's judgment in favor of Edison were the following:

1. Product liability applies to consumer products which have been placed in the stream of commerce. The electricity and the wires remained in the control of the defendant at the time of the accident, and product liability does not attach, citing *Genaust v. Illinois Power Co.*, 62 Ill.2d 456, 343 N.E.2d 465 (1976).

2. The danger inherent in overhead power lines is open and obvious, and no warning is required, again citing *Genaust.* The "distraction exception" articulated in *Ward v. Kmart Corp.*, 136 Ill.2d 132, 554 N.E.2d 223, 143 Ill.Dec. 288 (1990), only applies to landowners' liability and not to product liability. In the opinion of the district judge, the case of *Harnischfeger v. Gleason Crane Rentals, Inc.*, 223 Ill.App.3d 444, 165 Ill.Dec. 770, 585 N.E.2d 166 (5th Dist.1992), which held to the contrary, would not be followed by the Supreme Court of Illinois.

3. As to the alleged negligent coating of the wires with purportedly deceptive weatherproofing, there was no evidence that the plaintiff's conduct was influenced by the presence of the weatherproofing, since he testified that he thought that all overhead wires were insulated. Furthermore, the plaintiff's witness Feinberg was not qualified to testify on safety matters.

We agree with the district court that *Genaust* is the controlling authority in this case with respect to the proposition that neither the electricity nor the wires were "products" subject to product liability law. We leave to the discussion of the case against Hixon the more perplexing issue of the impact of the "distraction exception" on the rules regarding open and obvious defects. We further agree that the causal connection between the weatherproof coating of the wires and the accident was not established. We would go further and declare that there is no credible evidence that applying a weatherproof coating to the wires was negligent, if we had authority to do so, but we do not.

■ Despite our agreement with the substance of the district court's rulings, we must nevertheless vacate its judgment. Neither the district court nor this court acquired subject matter jurisdiction over the claims against Edison. Originally the plaintiff and his wife brought this action in state court

against Hixon only. Hixon removed the case to the United States District Court on the basis of diversity of citizenship (28 U.S.C. § 1332). Thereafter the plaintiff moved to amend the complaint by adding Edison as a defendant (Counts IV, V and VI), and the amendment was allowed without opposition. Since the plaintiff and Edison are both citizens of Illinois, the requisite diversity was destroyed. Supplementary jurisdiction under 28 U.S.C. § 1367 does not apply to parties added in diversity cases in contravention of 28 U.S.C. § 1332. 28 U.S.C. § 1367(b). It is well settled that subject matter jurisdiction can not be conferred by agreement of the parties. The motion to amend should not have been allowed. It is not necessary to dismiss the entire action, however, since Edison is not an indispensable party, but only to dismiss Edison out of the case. Fed.R.Civ.P. 19(b) and 21. This we are obliged to do on our own motion even after judgment. *Newman–Green, Inc. v. Alfonzo–Larrain*, 490 U.S. 826, 109 S.Ct. 2218, 104 L.Ed.2d 893 (1989); *Krueger v. Cartwright*, 996 F.2d 928 (7th Cir.1993). Accordingly, the judgment in favor of Edison must be **vacated** and the case remanded with instructions to dismiss the case against Edison for lack of subject matter jurisdiction.

II. *The case against Hixon.*

The bases for the district court's judgment in favor of Hixon were the following:

1. There was no duty on Hixon's part to warn of the danger of overhead electric transmission lines, because it is an open and obvious danger, again citing *Genaust, supra,* and declining to follow *Harnischfeger, supra.* The court noted, in disagreement with the magistrate, that the adequacy of a warning is a question for the jury, but, since there was no duty to warn, there was no need to discuss the adequacy of the warning.

2. Even if the "distraction exception" were to apply, the plaintiff was not in fact distracted.

3. Furthermore, the plaintiff testified on deposition that he had read the warning on the pole and that he was aware of the danger of contact with electric current.

Overhead electric power wires are an open and obvious danger as a matter of Illinois law, notwithstanding the plaintiff's subjective understanding that all such lines are insulated and the testimony of plaintiff's witness Feinberg to the contrary.

4. The plaintiff's witness Feinberg was not qualified to give expert testimony on safety standards. The testimony of the plaintiff's witness Dobson, proffered in the form of an answer to expert interrogatories, would not be considered, the plaintiff having failed to take his deposition or offer his affidavit.

5. The pole was not defectively designed because, as a metal pole, its inherent propensity to transmit electricity was obvious. Furthermore, it was capable of being safely used for the purpose for which it was intended. The plaintiff's injury was caused by his "misuse" of the pole. The plaintiff failed to satisfy his burden of proof that the design was defective.

### DUTY TO WARN

We do not share the district court's certainty that the "distraction exception" announced in *Ward, supra,* would not be extended to product liability cases by the Supreme Court of Illinois. The district panels of the Appellate Court of Illinois are divided on the question. In *McColgan v. Environmental Control Systems, Inc.,* 212 Ill.App.3d 696, 156 Ill.Dec. 835, 571 N.E.2d 815 (1st Dist.1991), it was held that the "distraction exception" applies only to premises liability and not to product liability. In *Harnischfeger, supra,* the exception was applied to hold the seller of a crane liable for failing to apply decals supplied by the manufacturer which warned of the danger of using the crane in the vicinity of overhead electric wires. Even though the operator was injured when the crane came into contact with "open and obvious" overhead wires, the seller could not escape liability where it should have foreseen the likelihood that the operator would be distracted by workmen, other equipment and "other elements." The distinction between premises liability and product liability is certainly not compelling, and may even be perceived as arbitrary, and we can not say with

any confidence that the Supreme Court of Illinois would embrace it.

But even if the "distraction exception" were the law of Illinois, it must have some limitations, or it would swallow the rule concerning open and obvious dangers. It is fair to assume, we submit, that people do not deliberately expose themselves to serious danger (except perhaps in the context of sports, which is another story), and that injury resulting from an open and obvious hazard is usually the consequence of a diversion of the mind from its primary duty of self preservation. If the "distraction exception" were to be carried to its logical conclusion, the absent-minded professor and the dedicated bird watcher would be invincible plaintiffs.

In this case, the plaintiff was looking at the levelling bubble at chest height on the pole when the tip of the pole either touched the wire or came close enough to the wire to cause the electricity to arc from the wire to the pole. We know of no Illinois case that holds that a plaintiff's deliberate, planned conduct constitutes "distraction." The plaintiff knew when he went on the site that he would be raising the pole and at the same time keeping it plumb by the use of the bubble. Even if *Harnischfeger* states the present law of Illinois, we would be reluctant to extend the "distraction exception" to the plaintiff's planned conduct.[1] Accordingly, we **affirm** the grant of summary judgment for the defendant on that part of the plaintiff's case which is grounded on strict liability and the concomitant duty to warn.[2]

## DEFECTIVE DESIGN

■ There remains the claim based on improper design. It is now settled that Illinois has adopted the risk/utility test in product liability cases. *Todd v. Societe Bic, S.A.,* 21 F.3d 1402, 1412 (7th Cir.1994). In this *en banc* opinion (the second *en banc* in the case), the court determined, by a vote of six to five, that the risk/utility doctrine does not apply to "simple but obviously dangerous products." *Id.* As we have said, the risk of injury arising from contact with an overhead electric wire is deemed to be obvious under the law of Illinois. *Genaust v. Illinois Power Co., supra.* In *Todd* this court made the determination that the disposable cigarette lighter involved in that case was a "simple" product. We conclude that this characterization is a matter of law to be determined by the court.

■ We have little guidance either from our own opinion or from the Illinois courts as to the criteria for distinguishing "simple" products from the not so simple. See *Todd,*

---

1. Plaintiff's counsel points out that there is evidence in the record that plaintiff was "distracted." This evidence appears in the deposition of William Webb, the chief surveyor for Edison and was extruded in the following colloquy:

   Q. [By plaintiff's counsel] Using the prism pole, in your experience and those people under your supervision, when you're looking at the levelling bubble as opposed to on the top, would you say your attention is directed away from what's above you?
   A. I think we established that.
   Q. You agree?
   A. Yes.
   Q. Would you say that you are distracted from what is above you?
   A. I would say your attention is on keeping the level in position.
   Q. *Could* you use the word distracted? [Emphasis supplied.]
   A. Yes.

   We are not impressed. In any case, as we have suggested above, "distracted" must be given a restricted meaning to make any sense in this context.

2. We digress briefly to discuss the district court's refusal to consider the proffered testimony of plaintiff's purported experts Jack Dobson and Barry Feinberg. Dobson's testimony was summarized in plaintiff's answers to interrogatories. The court took the position that it was the plaintiff's obligation to either depose his own expert or submit the expert's affidavit. Fed.R.Civ.P. 56(c) provides that the determination of a summary judgment motion may be based on answers to interrogatories. The court correctly disregarded this testimony, however, because the interrogatory answer did not establish any foundation for Dobson's expertise.

   Dr. Feinberg presents a quite different problem: His testimony was represented by a deposition of celestial length. The court rejected his testimony on the ground that, although he is an electrical engineer, he is not an expert on safety measures. He is familiar with nationally recognized standards for warnings, however, and was competent to identify them, which he did. In our view, that much of his testimony was competent. Given our ruling that there was no duty to warn, however, his testimony on the adequacy of the warning was properly excluded as irrelevant.

*supra; Scoby v. Vulcan–Hart Corp.*, 211 Ill. App.3d 106, 155 Ill.Dec. 536, 569 N.E.2d 1147 (1991). The prism pole is more than a simple telescoping pole. When equipped with a reflecting prism and a levelling device, it becomes a professional instrument, for which some specific training in its use is necessary. We conclude that the fact that some degree of expertise is required to use the prism pole takes it out of the class of "simple" products. *Cf. Spurgeon v. Julius Blum, Inc.*, 816 F.Supp. 1317 (C.D. Illinois, 1993), in which the risk/utility standard was held to apply where a plastic shield was missing from a milling machine. Accordingly, we deem the risk/utility standard to be appropriate for this case.

■ Under Illinois law, "[a] plaintiff may demonstrate that a product is defective in design so as to subject a retailer or manufacturer to strict liability for resulting injuries, in one of two ways: ... (2) by introducing evidence that the product design proximately caused his injury and the defendant fails to prove that on balance the benefits of the challenged design outweigh the risk of danger inherent in such designs." *Todd v. Societe Bic, S.A.*, 21 F.3d at 1410, quoting from *Lamkin v. Towner*, 138 Ill.2d 510, 150 Ill. Dec. 562, 568, 563 N.E.2d 449, 457. In our opinion, the plaintiff has adduced sufficient evidence to shift the burden of proof to the defendant, in accordance with this rule.

There is no doubt that the conductive nature of the aluminum pole was a cause of the plaintiff's injury. There was evidence of the existence of other telescoping poles used around overhead wires (for other purposes) which were made of fiberglass, a nonconductive substance. There was also evidence that a fiberglass sectional prism pole (as opposed to a telescoping pole) was too flexible to give reliable results in the field. Given this state of the evidence, the issue of proximate cause was for the trier of fact. The question of the plaintiff's own contribution to the injury is a matter of defense, and does not defeat the plaintiff's prima facie case. This is likewise a matter for the trier of fact, as is the sufficiency of the defendant's evidence that the benefits of the challenged design outweigh the risks. The lack of expert testimony is not a fatal defect in the plaintiff's case. While expert testimony is in practice common in such cases, it is not essential, if the subject can be understood by the ordinary juror, as we believe it can in this instance.

Accordingly the judgment for the defendant Hixon must be **reversed,** and the matter remanded for trial on the issue of defective design, if the issue cannot otherwise be disposed of.

## SUMMARY

The judgment in favor of Edison is **vacated** and the case is remanded with instructions to dismiss with respect to Edison for lack of subject matter jurisdiction. With respect to so much of the case against Hixon as is based on a duty to warn, the judgment in favor of Hixon is **affirmed.** With respect to so much of the case against Hixon as is based on defective design, the judgment in favor of Hixon is **reversed,** and the case is remanded for trial of that issue.

RIPPLE, Circuit Judge, dissenting.

The issue of whether there is a genuine issue of triable fact with respect to the liability of Hixon is indeed a close one. The majority's analysis is a thoughtful one. It seems to me, however, that Illinois would, in all likelihood, classify the pole in question as a simple implement to which the risk-utility test is inapplicable. *See Scoby v. Vulcan–Hart Corp.*, 211 Ill.App.3d 106, 155 Ill.Dec. 536, 538–40, 569 N.E.2d 1147, 1149–51 (Ill. App.Ct.1991). It seems clear that to the user, the metal pole poses special risks. Accordingly, I would affirm the judgment of the district court.