Martha HADDIX, Plaintiff–Appellant,

v.

PLAYTEX FAMILY PRODUCTS
CORPORATION, Defendant–
Appellee.

No. 97–2074.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 16, 1998.

Decided March 6, 1998.

David Stevens (argued), Brent D. Holmes, Heller, Holmes & Assocs., Mattoon, IL, for Plaintiff–Appellant.

Todd M. Tennant, Dobbins, Fraker, Tennant, Joy & Perlstein, Champaign, IL, William H. Robinson, Jr., Wright, Robinson, McCammon, Osthimer & Tatum, Richmond, VA, Richard M. Cooper, Williams & Connolly, Washington, DC, George W. Gessler (argued), Kimberley Marsh, Gessler, Hughes & Socol, Chicago, IL, for Defendant–Appellee.

Before CUMMINGS, BAUER and EVANS, Circuit Judges.

BAUER, Circuit Judge.

In this products liability case, removed to federal court on the basis of diversity of citizenship, plaintiff Martha Haddix ("Haddix") appeals from the district court's grant of summary judgment to defendant Playtex Family Products Corporation ("Playtex"). She presently argues that the district court's decision was erroneous and should be reversed. As discussed below, we find that the district court properly determined that summary judgment for the defendant was appropriate, and we affirm.

## BACKGROUND

On December 3, 1990, Haddix was hospitalized for several days after experiencing a high fever, chills, coughing, vomiting, diarrhea, and aches all over her body. Haddix was informed that she had contracted Toxic Shock Syndrome ("TSS"), and that she should never use tampons again. TSS is a disease caused by a toxin produced by the *Staphylococcus aureus* bacteria, the growth of which can occur in tampons. In the week prior to her hospitalization, Haddix had used Playtex Portable super absorbency tampons for spotted menstrual bleeding. On Friday, November 30, Haddix felt ill, prompting her to leave work early and go to the hospital. After undergoing some tests, she was released and diagnosed with the flu. Over the next few days, her symptoms persisted and worsened, leading to Haddix's hospitalization and the eventual diagnosis that she suffered from TSS.

In response to her illness, Haddix filed suit against Playtex on December 3, 1992, in the Circuit Court of Edgar County, Illinois. Playtex (and then-defendant K–Mart, who was later dismissed from the suit) removed the case to the United States District Court for the Central District of Illinois on January 5, 1993. After a rather confusing procedural history and the filing of several motions for summary judgment by Playtex, Chief Judge Michael M. Mihm granted summary judgment to Playtex on all remaining issues on March 26, 1997. Final judgment was entered the same day, and Haddix filed a timely notice of appeal on April 24, 1997. In this appeal, Haddix argues that Judge Mihm erroneously granted summary judgment to Playtex on those parts of her complaint which alleged that the Playtex tampons used by Haddix were unreasonably dangerous and caused her to suffer from TSS and asserted that Playtex was strictly liable for her injuries. Haddix alleged that the super-absorbent tampons made by Playtex contained synthetic fiber as well as natural fiber, rendering them more likely to promote the growth of TSS-causing bacteria. With this brief history in mind, we turn to Haddix's contentions.

## DISCUSSION

We review the district court's grant of summary judgment de novo. *McGinn v. Burlington Northern Ry. Co.*, 102 F.3d 295, 298 (7th Cir.1996) (citation omitted). Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). We view the record and extract all reasonable inferences from it in the light most favorable to the nonmoving party. *McGinn*, 102 F.3d at 298 (citation omitted). Only disputes that could affect the outcome of the suit under governing law will preclude an entry of judgment for the moving party. *Id.*

■ The parties seem to agree that this products liability case is governed by Illinois law. Illinois has adopted the strict liability formula set forth in Restatement (Second) of Torts § 402A (1965) (hereinafter "Restatement"). *Lamkin v. Towner*, 138 Ill.2d 510, 150 Ill.Dec. 562, 569–70, 563 N.E.2d 449, 457 (1990). Accordingly, strict liability is imposed on anyone who sells any product in a defective condition unreasonably dangerous to consumers, users, or their property. *Martin v. Harrington and Richardson, Inc.*, 743 F.2d 1200, 1202 (7th Cir.1984); Restatement § 402A. A product may be considered unreasonably dangerous for two reasons: 1) because of a design or manufacturing defect, or 2) because of a failure to warn consumers of a danger posed by the product of which the average consumer would not already be aware. *Martin*, 743 F.2d at 1202; *Lamkin*, 150 Ill.Dec. at 569–70, 563 N.E.2d at 457. In her brief, Haddix concedes that the failure to warn prong is inapplicable here, since all failure to warn arguments are preempted in the context of tampon products liability cases by 21 U.S.C. § 360k(a),[1] part of the Medical Device Amendments of 1976 to the Federal Food, Drug, and Cosmetic Act (21 U.S.C. §§ 301 *et seq.*), and also by corresponding sections of the Code of Federal Regulations (*e.g.*, 21 C.F.R. § 808.1(b)). See Appellant's Brief at 9. Accordingly, we examine Haddix's arguments regarding the design or manufacture of the Playtex tampons.

■ In order to state a cause of action for strict products liability in Illinois, the plaintiff must show that: 1) an injury resulted from the condition of the product; 2) the condition of the product was unreasonably dangerous; and 3) the condition existed at the time that the product left the manufacturer's control. *Hunt v. Blasius*, 74 Ill.2d 203, 23 Ill.Dec. 574, 578, 384 N.E.2d 368, 372 (1979) (citing *Suvada v. White Motor Co.*, 32 Ill.2d 612, 210 N.E.2d 182 (1965)). Under the Restatement approach to strict liability, a product is considered unreasonably dangerous when it is "dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." *Id.* (quoting Restatement § 402A, cmt. *i* (other citations omitted)). This test has come to be known as the "consumer contemplation" test. *Todd v. Societe Bic, S.A.*, 21 F.3d 1402, 1406 (7th Cir.) (en banc), *cert. denied*, 513 U.S. 947, 115 S.Ct. 359, 130 L.Ed.2d 312 (1994).

[5] Under the Restatement, the consumer contemplation test was the only standard authorized for determining whether a product was unreasonably dangerous. It was perceived by critics to be too restrictive on manufacturers' liability, however, and soon another test also evolved: the "risk-utility test."[2] *Todd*, 21 F.3d at 1409. Announced by the California Supreme Court in *Barker v. Lull Engineering Co.*, 20 Cal.3d 413, 143 Cal.Rptr. 225, 573 P.2d 443 (Cal.1978), the risk-utility test has also been adopted in Illinois. *See Todd*, 21 F.3d at 1409. As set forth in *Lamkin*, the test in Illinois is as follows:

A plaintiff may demonstrate that a product is defective in design, so as to subject a

---

**1.** This statute reads as follows:

Except as provided in subsection (b) of this section, no State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement—
(1) which is different from, or in addition to, any requirement under this chapter to the device, and

(2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this chapter.
21 U.S.C. § 360k(a) (West Supp.1997).

**2.** While the evolution of the risk-utility test is interesting, it is not particularly germane here. For a comprehensive discussion of the roots of this test, *see Todd*, 21 F.3d at 1409–10.

retailer and a manufacturer to strict liability for resulting injuries, in one of two ways: (1) by introducing evidence that the product failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner or (2) by introducing evidence that the product's design proximately caused his injury and the defendant fails to prove that on balance the benefits of the challenged design outweigh the risk of danger inherent in such designs.

150 Ill.Dec. at 570, 563 N.E.2d at 457 (citing *Palmer v. Avco Distributing Corp.*, 82 Ill.2d 211, 45 Ill.Dec. 377, 412 N.E.2d 959 (1980) and *Barker*, 143 Cal.Rptr. at 235, 573 P.2d at 453).

■ The district court, in deciding Haddix's motion for summary judgment, applied the consumer contemplation test but not the risk-utility test. This is because, as the district court properly found, only the consumer contemplation test applies when a simple product which poses an obvious danger is alleged to be defective. *Todd,* 21 F.3d at 1412; *Scaccianoce v. Hixon Mfg. & Supply Co.*, 57 F.3d 582, 586 (7th Cir.1995) (citing *Todd); Scoby v. Vulcan–Hart Corp.*, 211 Ill. App.3d 106, 155 Ill.Dec. 536, 540, 569 N.E.2d 1147, 1151, *appeal denied,* 141 Ill.2d 560, 162 Ill.Dec. 509, 580 N.E.2d 135 (1991). In her brief, Haddix implicitly argues that we should overrule *Todd,* stating that "*Lamkin* remains good law ... [and thus] Appellant should be able to use both or either test in showing the Playtex tampon to be an unreasonably dangerous product." Appellant's Brief at 10. This argument is not compelling, and we find no reason to revisit the issue decided by an *en banc* court in *Todd.* As we stated there:

> When given a choice between an interpretation of Illinois law which reasonably restricts liability, and one which greatly expands liability, we should choose the narrower and more reasonable path (at least until the Illinois Supreme Court tells us differently). The dictum in *Lamkin* notwithstanding, we may assume, as an Illinois appellate court has done [in *Scoby*, 155 Ill.Dec. at 540, 569 N.E.2d at 1151], that the Illinois Supreme Court

would not apply the risk-utility test to a simple but obviously dangerous product.

*Todd,* 21 F.3d at 1412. This holding stemmed from *Scoby,* where the Illinois Appellate Court, Fourth District, found that "[s]omewhere, a line must be drawn beyond which the danger-utility [a.k.a. risk-utility] test cannot be applied." 155 Ill.Dec. at 540, 569 N.E.2d at 1151. The court found that simple products which posed an obvious danger were beyond that line. *Id.* The Illinois Supreme Court has not made any decision contrary to *Scoby* or *Todd,* and the principles contained therein remain the controlling law here.

■ In determining that the risk-utility test was not applicable, the district court implicitly found that tampons are simple products (although it did not engage in any discussion of the matter). Whether a product is a "simple" product is a matter of law to be decided by the court, *Scaccianoce,* 57 F.3d at 586, and a matter which we decide *de novo* on this motion for summary judgment. Haddix provides two arguments in support of her position that tampons are not simple devices, both of which we find to be unpersuasive. First, she alleges that it takes complex thought to understand the interaction between microorganisms and a tampon which results in the release of TSS-causing toxins. Haddix has not cited any cases supporting the proposition that a product cannot be classified as simple because the mechanics of an injury caused by it are complex, and we reject this argument. Such an inquiry may be appropriate in ascertaining whether the dangers posed by the product are obvious, but it does not shed any light on whether a product is simple.

Haddix also argues that tampons are not simple products because their insertion requires "specialized knowledge," noting that Playtex provides detailed insertion instructions with its products. Appellant's Brief at 12. Haddix also cites *Scaccianoce,* where we stated that "the fact that some degree of expertise is required to use the prism pole takes it out of the class of 'simple' products."

---

---

57 F.3d at 587.[3]  The analogy to *Scaccianoce*, however, is not a useful one, since there we found the prism pole was "more than just a telescoping pole," and was a "professional instrument, for which some specific training in its use is necessary." *Id.* The case did not establish, as Haddix seems to argue, that any product which requires instructions or practice to use cannot be considered "simple." By its very nature, a tampon is a simple product: as defined in the Code of Federal Regulations, a tampon is "a plug made of cellulosic or synthetic material that is inserted into the vagina and used to absorb menstrual or other vaginal discharge." 21 C.F.R. §§ 884.5460 and 884.5470 (1997).  The fact that a first-time user may need instructions to insert a tampon properly does not render it a "professional instrument" or take it out of the realm of simple products.  We find, therefore, as a matter of law, that tampons are "simple products" for purposes of applying the risk-utility test.

In addition, the dangers posed by tampons are obvious.  Haddix argues that the "growth of endotoxin-producing bacteria is not an inherent property of a tampon that is obvious to all consumers who come in contact with a tampon." Appellant's Reply Brief at 3. It is undisputed, however, that, as required by federal regulations (specifically 21 C.F.R. § 801.430), Playtex places warnings on every box of tampons it sells, warning consumers of the dangers of TSS and the role tampons may play in causing the disease.  The warning, in pertinent part, states as follows:

WARNING SIGNS
WARNING SIGNS OF TSS FOR EXAMPLE ARE: SUDDEN FEVER (USUALLY 102 OR MORE) AND VOMITING, DIARRHEA, FAINTING OR NEAR FAINTING WHEN STANDING UP, DIZZINESS, OR A RASH THAT LOOKS LIKE A SUNBURN.  IF THESE OR OTHER SIGNS OF TSS APPEAR, YOU SHOULD REMOVE THE TAMPON AT ONCE, DISCONTINUE USE, AND SEE YOUR DOCTOR IMMEDIATELY.
There is a risk of TSS to all women using tampons during their menstrual period.

TSS is a rare but serious disease that may cause death.  There are scientific studies that have concluded that tampons contribute to the cause of TSS.

. . .

There are scientific studies which have concluded that higher absorbency tampons increase the risk of TSS. A 1986–87 study reported an increased risk of TSS with Playtex Tampons compared with other tampons. . . .

. . .

Select the minimum absorbency needed to control your menstrual flow in order to reduce the risk of getting TSS.

*See* Rec. Doc. 82 Exh. 3(B).  These warnings put tampon users on notice that there is a risk of contracting TSS from the use of tampons, especially Playtex and higher absorbency tampons.  Even though the interaction between tampon material and bacteria growth may not be obvious, the ultimate effects of such growth are made obvious by the warnings.

Haddix also argues that the risk-utility test should apply because she introduced evidence that there may be an unjustifiable risk to tampon consumers from Playtex tampons. Appellant's Brief at 12.  At his deposition, Philip Tierno, an expert witness for Haddix, stated the following conclusion:

Thus, it appears that women who are without protective levels of antibody to TSST–1 and use non-all cotton tampons . . . are at the greatest risk for TSS. The remaining imperative is for epidemiologic surveillance to verify these findings with all cotton tampons.  Until that time, however, in light of the occurrence of TSS among women using non-cotton tampons, the current data strongly indicates that all cotton fiber tampons would greatly reduce the risk of TSS. We therefore, would be prudent to suggest an exclusive use of all cotton fibers in cataminial [sic] devices.

Tierno Dep. at 181–82.  Taken in a light most favorable to Haddix, however, this conclusion is incomplete and states that data is needed to verify that all-cotton tampons truly

---

**3.** A prism pole is a telescoping aluminum pole used by surveyors to sight lines where there are obstructions at ground level, such as underbrush. *Scaccianoce,* 57 F.3d at 583.

are safer than synthetic-blend tampons. In any event, this testimony does not show that the risk of contracting TSS from Playtex tampons is not obvious, and does not alter our above conclusion.

In summary, we find that tampons are, as a matter of law, simple products, and that the warnings about the risks of TSS make the dangers posed by tampons obvious. As such, tampons fall within the "simple product" exclusion of *Todd,* and the district court correctly found that Haddix cannot rely on the risk-utility test in attempting to prove her products liability case.

 Applying the consumer contemplation test to the present case, we find that summary judgment was properly granted by the district court. The Ninth Circuit, in a case similar to the present one, has found that the warnings contained on and in a box of tampons preclude success under the consumer contemplation test. *Papike v. Tambrands, Inc.,* 107 F.3d 737 (9th Cir.1997). Therein, the court stated that:

> [Defendant's] warnings met the federal requirements and [plaintiff's] design defect claim therefore fails the "consumer expectation" test. To rule otherwise would allow the anomalous circumstance that a consumer is entitled to expect a product to perform more safely than its government-mandated warnings indicate.

107 F.3d at 743. We agree with the analysis of the Ninth Circuit. The mandated warnings on each box of Playtex tampons clearly set forth the risk of acquiring TSS through the use of tampons, and Haddix testified in her deposition that she had read the warnings prior to her contracting TSS and was aware that there was a risk of contracting TSS when using tampons. *See* Haddix Deposition at 48–49. This evidence establishes that Haddix knew of the warnings at the time she allegedly contracted TSS, and the tampons manufactured by Playtex are not, as a matter of law, "dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." *Hunt,* 23 Ill.Dec. at 578, 384 N.E.2d at 372. As such, Haddix's claim for products liability

fails under the consumer contemplation test, and the district court correctly granted summary judgment to the defendant.

## CONCLUSION

In summary, we find that tampons are simple products and the danger posed by their use is open and obvious, rendering the risk-utility test inapplicable in this case. Furthermore, Haddix has failed to meet the requirements of the consumer contemplation test. We therefore AFFIRM the district court's judgment in favor of the defendant.